AIKEN v. THE CHICAGO, BURLINGTON & QUINCY R'Y CO.

1. **Carriers of Goods:** LIABILITY UNDER IMPLIED CONTRACT: EXAMPLE. An undertaking by the carrier to transport property to its destination may be implied from the circumstances under which it comes into his possession, and in that case he is charged with the same responsibility for its safety as though his obligation to transport it was created by express agreement. For illustration of the rule see opinion.

2. **Evidence:** INFERENCE FROM FACTS EXCLUDED. An ordinary witness may not be allowed to state what conclusion he has arrived at from the investigation of certain facts.

*Appeal from Page District Court.*

THURSDAY, MARCH 18.

THIS is an action for the recovery of the value of twenty-eight hogs which plaintiff alleges he delivered to defendant to be transported to Chicago, but which it failed to deliver to him, or to his consignee at Chicago. There was a verdict and judgment for plaintiff. Defendant appeals.

*Hepburn & Thummel*, for appellant.

*Moore & Scott*, for appellee.

REED, J.—I. On the seventh of February, 1882, plaintiff delivered to defendant, at Clarinda, over 700 head of hogs, which defendant undertook to transport to the Union stock-yards at Chicago, and for which the station agent at Clarinda gave him a receipt or bill of lading. When the hogs were loaded on the cars, one car contained but forty-eight head. This was not the full capacity of the car, and when the train arrived at Hepburn, a station a few miles from Clarinda, plaintiff caused a lot of hogs which were in the stock-yards at that station to be placed on said car. Plaintiff claims that there were thirty-nine head in this lot; but, when the train arrived at Ottumwa, the hogs were counted, and it was found that the car then contained but sixty-one head. Defendant had a station agent at Hepburn, but he was not present at the stock-yards when the hogs were loaded; nor did he make any express contract for their transportation, nor give any receipt or bill of lading for them. He was informed, however, before the train left the station, that they had been loaded into the car, and that this had been done under the direction of the agent at Clarinda, and offered to give a receipt for them, and made no objection to their shipment on that train. Defendant's car distributor and train dispatcher had ordered the conductor

*1. CARRIERS of goods: liability under implied contract: example.*

of the train to stop at Hepburn, and permit the loading of said hogs, and, in obedience to this order, the conductor caused the car to be run to the stock-yards, and he was present when the hogs were driven into the car, and closed it up after it was fully loaded. The station agent at Clarinda had also given him the same directions, but the hogs loaded at Hepburn were not covered by the receipt or bill of lading given by him. Defendant by its answer denied that the hogs placed in the car at Hepburn were received by any agent having authority to receive them or to contract in its name for their transportation from that point. It also alleged that the station agent at Hepburn was the only person who had authority to receive said hogs, or contract in its name for their transportation from that station. On the trial it objected to the evidence offered by plaintiff to prove the directions given by the train dispatcher, and the station agent at Clarinda, to the train conductor, and upon which he acted in permitting plaintiff to load the hogs into the car at Hepburn, on the ground that it was not shown that they had authority to contract for the shipment of freight from that station, or to give any direction with reference to the receiving of freight at that place for shipment. The court overruled the objection, and permitted plaintiff to prove the facts stated above with reference to the giving of the directions and the loading of the hogs into the car under the direction of the conductor. Defendant then proved that the agent at Clarinda was authorized to contract for the shipment of property from that station only, and that neither the train dispatcher nor train conductor had any authority to make any contract whatever with reference to the shipment of freight. But the court instructed the jury, in effect, that, when the hogs were loaded into the car, under the circumstances proven, defendant became responsible for their safe transportation and delivery.

Appellant assigns the ruling admitting said evidence, and the giving of said instruction, as error.

It is contended by counsel that defendant can be held responsible for the safety of the property only in case it was bound by contract for its transportation; and, as neither the conductor who permitted it to be placed on the car, nor the agents under whose direction he acted in doing so, had authority from defendant to contract for the shipment of the property from that station, no contract for it transportation which was binding on it was entered into, and hence no responsibility for the care of the property was ever created. This argument assumes that the carrier is charged with responsibility for the care of the property only in case he is bound by express contract for its carriage. But the correctness of this assumption cannot be admitted. An undertaking by the carrier to transport the property to its destination may be implied from the circumstances under which it comes into his possession, and in that case he is charged with the same responsibility for its safety as though his obligation to transport it was created by express agreement; and in the present case we think it clear that the circumstances of the shipment of the property raise an implied understanding by defendant for its transportation. Plaintiff, without the express permission of any authorized agent of defendant, placed his property in the car with the view of having it transported to Chicago. The agent of defendant, who was authorized to contract for the shipment of the property, knew that it had been placed upon the car, and was informed of the circumstances under which it had been placed there, and the object which plaintiff had in view in placing it there, and without any objection he permitted it to be sent forward to its destination. From these circumstances the law will imply an undertaking by defendant to transport the property to its destination, and an agreement by plaintiff to pay a reasonable compensation for the service, and to submit to such reasonable and lawful rules as defendant may have established for the government of shippers of that class of property; and the responsibility resting on defendant for the care and safety of

the property is the same as though these undertakings of the parties had been created by express contract.

. II. Plaintiff was required, under the issue, to prove the number of hogs shipped from Hepburn, and there was some conflict in the evidence on that question. An agent of defendant, who was charged at one time with the duty of examining plaintiff's claim for the loss in question, was examined as a witness in defendant's behalf. He was not present at the time of the shipment, and had no personal knowledge with reference to the number of hogs shipped, and was not examined by defendant on that question. On cross-examination, plaintiff's counsel asked him if he had not at one time been perfectly satisfied that there were thirty-nine hogs in said shipment. The court overruled defendant's objection to the question, and required the witness to answer it, and he stated that he was satisfied at one time, from his examination, that there was that number of hogs in the shipment; but that he afterwards became satisfied that his conclusion was wrong. The objection to the question should have been sustained. Under the ruling of the court, plaintiff was permitted to show to the jury that the witness, who had been charged by defendant with the duty of examining the claim, had reached the conclusion, from an examination of the evidence, that the claim, in one material respect, at least, was correct. The opinion formed by the witness was clearly incompetent, and its admission could hardly fail to be prejudicial; and we cannot say that the prejudice caused by its admission was overcome by the subsequent statement of the witnesss that he had changed his opinion upon a further examination. For this error the judgment must be

2. EVIDENCE: inference from facts excluded.

REVERSED.