GULF, C. & S. F. RY. CO. et al. v. D. S. CAGE & CO. (No. 6766.)

(Court of Civil Appeals of Texas. Galveston. March 10, 1915.)

1. CARRIERS ⊜ºº113 — CARRIAGE OF GOODS — DELIVERY TO CARRIER—BILL OF LADING.

In accordance with custom, the I. railroad through its yard foreman, undertook to switch a car of rice from the spur track of the plaintiff to the tracks of the G. railroad connecting with it, over which such rice was to be shipped. Upon being notified by the plaintiff that it had notified the I. railroad to switch such car, the G. railroad issued to the plaintiff its bill of lading covering the shipment. The I. railroad neglected to switch the car, which was shortly destroyed by fire. *Held*, that under the general custom, the loading of the car and notice by the shipper to the I. railroad, made the I. railroad the agent of the G. railroad to receive the shipment, and that the issuance by the G. railroad of the bill of lading, with full knowledge of the facts, was equivalent to delivery of the shipment to the G. railroad and acceptance by it which gave rise to its liability, as insurer, although the shipment was destroyed before actually coming into its possession.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 100, 101, 608–620; Dec. Dig. ⊜ºº 113.]

2. INDEMNITY ⊜ºº13—CARRIAGE OF GOODS— LIABILITY OF SWITCHING CARRIER.

In accordance with custom, the I. railroad, through its yard foreman, undertook to switch a car of rice from the spur track of the plaintiff to the tracks of the G. railroad connecting with it, over which such rice was to be shipped. Upon being notified by the plaintiff that it had notified the I. railroad to switch such car, the G. railroad issued to the plaintiff its bill of lading covering the shipment. The I. railroad neglected to switch the car, which was shortly destroyed by fire. *Held*, that the I. railroad, under the general custom, was liable to respond to the G. railroad for a judgment against it in favor of the shipper, although the I.'s switching services, which were performed for a switching fee and not a freight charge, were not over its main line under contract of shipment, and were without knowledge on its part of the commodity loaded, consignor, consignee, or destination of the shipment.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29–35; Dec. Dig. ⊜ºº13.]

3. CARRIERS ⊜ºº129 — CARRIAGE OF GOODS — LIABILITY — SWITCHING CARRIER — USE OF CAR FORBIDDEN BY CARRIERS' RULE.

Where a rule of a railroad that its service cars could not be loaded for shipments which it had no part in transporting, and in the division of freight charges for which it had no share was systematically disregarded by it, neglect of the rule in an individual case, when such a car was loaded for switching only to another road, could not serve it as a defense when sued for the loss of the shipment concerned.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 545–551; Dec. Dig. ⊜ºº129.]

---

**4. CARRIERS ☞134 — CARRIAGE OF GOODS — DELIVERY TO AND ACCEPTED BY CARRIER— SUFFICIENCY OF EVIDENCE.**

Evidence *held* sufficient to show that a car loaded by shipper on its spur track was delivered to and accepted by defendant road for switching to a connecting road for transport.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–592, 607; Dec. Dig. ☞134.]

**5. CARRIERS ☞134 — CARRIAGE OF GOODS — RULE OF CARRIER—NONENFORCEMENT—SUFFICIENCY OF EVIDENCE.**

Evidence *held* sufficient to show that a railroad did not enforce its rule regarding the loading of shipments, for which it was to receive no part of the transportation charge, into its service cars.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–592, 607; Dec. Dig. ☞134.]

Appeal from Harris County Court, at Law; Clark C. Wren, Judge.

Action by D. S. Cage & Co. against the Gulf, Colorado & Santa Fé Railway Company, the International & Great Northern Railway Company, and the Industrial Rice Milling Company. From a judgment for plaintiff against the Gulf, Colorado & Santa Fé Railway Company such defendant appeals, and from a judgment in favor of the Gulf, Colorado & Santa Fé Railway Company against the International & Great Northern Railway Company, the latter appeals. Affirmed.

Terry, Cavin & Mills, A. H. Culwell, and Jno. G. Gregg, all of Galveston, for appellant Gulf, C. & S. F. Ry. Co. Wilson, Dabney & King and Geo. A. Hill, Jr., all of Houston, for appellant International & G. N. Ry. Co. L. B. Moody, of Houston, for appellee.

McMEANS, J. This is an action brought by D. S. Cage & Co., against the Gulf, Colorado & Santa Fé Railway Company, the International & Great Northern Railway Company, and the Industrial Rice Milling Company, to recover $438.55, with interest from February 29, 1912, the alleged value of a car load of rice and rice products, purchased by the plaintiff from defendant Industrial Rice Milling Company, and by said company delivered, on February 19, 1912, for shipment, to the defendant railway companies, under bill of lading issued by defendant, Gulf, Colorado & Santa Fé Railway Company, which said car load was never delivered. In three counts, pleaded alternatively, plaintiff seeks recovery against each defendant separately, that is, against the Gulf, Colorado & Santa Fé Railway Company, as having issued the bill of lading and breached its contract by nondelivery; against the International & Great Northern Railway Company by reason of failing to switch the car from the industrial track where loaded, after being notified by plaintiff's agents, Industrial Rice Milling Company, to switch the car; and against the Industrial Rice Milling Company for failing to notify the International & Great Northern Railway Company to switch the car to the Gulf, Colorado & Santa Fé Railway Company's tracks after the car was loaded. The Gulf, Colorado & Santa Fé Railway Company answered that it executed the bill of lading without receiving the car, which was located on the International & Great Northern Railway's industrial switch track, and that under customs in vogue, the switching notice was to be given by the Industrial Rice Milling Company to the International & Great Northern Railway Company, and that the Gulf, Colorado & Santa Fé Railway Company did not give the notice to switch the car; that the rice products were destroyed by a fire of great range, while the car was standing at the industrial track where loaded, which belonged to the International & Great Northern Railway Company; that the Industrial Rice Milling Company failed to give the switching notice, but that if any railway company was at fault, the International & Great Northern Railway Company was solely responsible, whereby it asked recovery over against said last-named company in the event of recovery by the plaintiff against it. The defendant International & Great Northern Railway Company answered that the loading of this particular car, while at its industrial track, for a shipment destined to a local point on the Gulf, Colorado & Santa Fé Railway was not only unknown to it, but was in violation of its rule prohibiting such use and loading, which was a reasonable rule, generally enforced, known to all the parties to this litigation, and, further, that it did not accept the car for shipment as loaded, nor switch the same, but that the car and contents were destroyed while the car was standing at the industrial switch where loaded, by a fire through no fault on its part, and while the car was not in its possession; that there was no notice to switch given to it, and the car as loaded and billed was subject to the disposition of the Gulf, Colorado & Santa Fé Railway Company. The Industrial Rice Milling Company answered that it had duly notified the International & Great Northern Railway Company to switch the car, and performed all its duties in the premises both two days before the fire and during the fire, and that said last-named company was solely at fault. Trial before the court without a jury resulted in judgment in favor of the plaintiff for amount sued for against the Gulf, Colorado & Santa Fé Railway Company, and in favor of that company against the International & Great Northern Railway Company for the amount adjudged against it; and no recovery was had against the Industrial Rice Milling Company. From the judgment against the Gulf, Colorado & Santa Fé Railway Company in favor of plaintiff, said company has appealed, and the International & Great Northern Railway Company has ap-

pealed from the judgment over against it in favor of the railway company first named.

[1] We shall first dispose of the questions presented by the appeal of the Gulf, Colorado & Santa Fé Railway Company. Its first assignment of error is as follows:

"The court erred in not rendering judgment for, and in rendering judgment against, this defendant, because the undisputed evidence and findings of fact show that said car had never come into the actual or constructive possession of this defendant, but was at the time same was destroyed on the tracks and in the possession of the International & Great Northern Railway Company, at the mill of the Industrial Rice Milling Company, a distance of two miles from the line of this defendant, where it was to be delivered before this defendant could transport the same, and therefore, in contemplation of law, the bill of lading, which could only take effect from the time this defendant took charge of the car, was not in force and effect in so far as this defendant is· concerned."

It contends by its propositions under the assignment: (1) That a railway company issuing its bill of lading to a shipper of goods, either under an agreement or a custom, known to both parties, that the same were to be subsequently delivered to such railroad by an independent agency, is not liable as a common carrier for loss of or damage to the goods before the same actually come into its possession; and (2) that where a railway company issues its bill of lading to a shipper, under a custom, known to both, that the same must be delivered to the carrier by means of a switching movement of another railway company, which movement under said custom is to be made upon the request of the shipper to the line of the carrier issuing the bill of lading, the latter is not liable as a common carrier for the loss of the goods where the same never came into its possession.

The court upon proper request reduced to writing and filed its findings of fact; and we here set out so much of the same as is pertinent to the questions raised by both appellants:

"(1) The defendant, Gulf, Colorado & Santa Fé Railway Company and International & Great Northern Railway Company are common carriers engaged in the transportation of passengers and freight for the general public for hire, and were so engaged on February 19, 1912, and ever since then.

"(2) On February 17, 1912, the Industrial Rice Milling Company, at the request of plaintiff, loaded 190 sacks of rice bran and polish belonging to the plaintiff into a certain Missouri Pacific car No. 35497, which was then standing upon the industrial track of the International & Great Northern Railway Company, at the warehouse of said milling company, and thereafter, on February 19, 1912, the Gulf, Colorado & Santa Fé Railway Company executed and delivered to plaintiff a bill of lading, whereby it agreed and promised to carry said car and the contents thereof to its usual place of delivery, at Alvin, Tex., and there deliver the same to whomsoever plaintiff might direct, for a compensation agreed upon of four cents per hundred pounds."

"(4) The said Gulf, Colorado & Santa Fé Railway Company did not carry said car and its contents to its usual place of delivery at Alvin, Tex., and there deliver the same to whom-

soever plaintiff might direct, but on February 21, 1913, the said car and its contents were totally destroyed while still standing at the place where it had been loaded."

"(6) The Industrial Rice Mill was on the line of the International & Great Northern Railway Company; that is to say, industrial property. The Gulf, Colorado & Santa Fé Railway Company had no track, either main line or switch, running into said mill; the distance from the Gulf, Colorado & Santa Fé Railway Company's track to the said mill via the International & Great Northern Railway was about two miles, all of which was known to plaintiff at the time the bill of lading covering the shipment was issued.

"(7) The International & Great Northern Railway Company had a rule in vogue at the time of the loading of said car that it would not receive orders to switch a car from an industry on its line from railroad which was to transport said shipment, but that it required said order to be given by the industry loading the shipment, and in this case it was to be given by the Industrial Rice Milling Company.

"(8) I find there was a universal custom in vogue in the city of Houston at the time this shipment was made and for a long time prior thereto, which custom was in the contemplation of plaintiff and the Gulf, Colorado & Santa Fé Railway Company at the time said bill of lading was signed, to the effect that where shipments are loaded at a rice industry on the line of one railroad, destined to a point on the line of another railroad, which latter railroad has no switch into said industry, it is the duty of the industry to notify the switching foreman of the railroad which has a switch running into such industry to switch a car when loaded to the railroad upon whose line of railway the shipment is to be transported. I find that under this custom the Industrial Rice Milling Company, who were the plaintiff's agents for this purpose, notified the switching foreman of the International & Great Northern Railway Company concerning this shipment on February 19, 1912, and also a second time on February 20, 1912. I further find that it was a part of this custom for the railroad company upon whose line of railway said car was to be transported to sign a bill of lading for such car as soon as the shipment was loaded, and prior to the switching of the same to its line.

"(9) I further find that said car was never in the actual possession of the Gulf, Colorado & Santa Fé Railway Company, and that the notice required by the rules of the International & Great Northern Railway Company for it to switch the car from the line of the Industrial Rice Milling Company to the Gulf, Colorado & Santa Fé Railway Company was given in this case, and that the actual constructive possession of said car had passed in the International & Great Northern Railway Company.

"(10) The freight on this shipment, exclusive of switching charge, was $12.04. For switching the car from the Industrial Rice Milling Company to the Gulf, Colorado & Santa Fé Railway Company the International & Great Northern Railway Company would have been entitled, under the rules of the Railroad Commission of Texas, to receive $2. The switching charge could have been paid by the plaintiff or carried as an advance charge, and could have been collected at destination by the Gulf, Colorado & Santa Fé Railway Company. In this particular instance such switching charge would have been collected by the Gulf, Colorado & Santa Fé Railway Company from the shipper or his assigns and paid over to the International & Great Northern Railway Company."

From the foregoing fact findings of the court (to which appellant has not excepted), and from the evidence in the record, it appears that there was a general custom pre-

# 858

vailing among railroad companies and shippers in the city of Houston substantially to this effect: That where a shipment was made by an industry located on an industrial track of one railroad to be transported over the line of another railroad to its destination, it was the duty of the shipper, after it had loaded the car at its plant on the industrial track, to notify the owner of such track to switch the car to the railroad over which it was to be transported; that when such notice had been given it became the duty of the owner of the industrial track to so switch the cars, and the giving of such notice was, under the custom, the only action required by the shipper to secure the delivery of the car by the owner of the industrial track to the railroad over which the shipment was to be transported; that after this notice was so given to the owner of the industrial track, it was the custom of the shipper to notify the railroad company over whose line the shipment was to be transported that the car had been loaded, and that notice thereof, accompanied by a request to switch the car to the transporting line, had been given to the owner of the industrial track, whereupon the line over which the shipment was to be transported would issue its bill of lading therefor. It appears from the evidence and the court's findings that everything necessary to be done by the shipper, under this custom, was done, and if the general rule had been followed in this instance by the owner of the industrial track, the shipment would have reached the line over which it was routed in a very short time thereafter. However this may be, the appellant Gulf, Colorado & Santa Fé Railway Company, recognizing the custom above mentioned, and in pursuance thereof, issued its bill of lading for the shipment after it knew that the shipper had performed everything necessary to deliver the shipment to it, and which, had the custom been followed in this instance, but which without any fault on the part of the shipper was not followed, would have resulted in the delivery of the shipment into its actual possession in a short time after the issuance of the bill of lading. We think that, under the custom, the loading of the car and notice of the owner of the industrial track to switch it to the line of the Gulf, Colorado & Santa Fé Railway Company constituted the former the agent of the latter, especially after it promised to switch the car, as the evidence shows it did, and thereafter the issuance by the Santa Fé of the bill of lading with full knowledge of the facts was tantamount to a delivery to and acceptance by the Santa Fé of the shipment, and it thereby became liable as an insurer, although the shipment was thereafter destroyed before coming into its actual possession. Revised Statutes 1911, art. 713; M., K. & T. Ry. v. Union Ins. Co., 39 S. W. 975; T. & P. Ry. v. Nicholson, 61 Tex. 495. From the case first cited we quote:

"It appears from the evidence that the custom and habit of dealing between the appellant and the compress company and the owners of the cotton that was delivered to the compress company for compression and shipment was that the cotton for which bills of lading were issued by the appellant, and which was designated and identified as the cotton mentioned and described in the bills of lading, should be regarded as then under the dominion and control of the carrier, and that its liability as a carrier then attached, although there was no actual delivery to the carrier on board its cars. By the custom of the parties the carrier received its cotton for transportation from the platform of the compress company, and bills of lading were issued by the carrier covering the cotton on the compress platform before the cotton ever came into the actual possession of the carrier; but when these bills were issued it was understood by all the parties that the cotton covered by the bills could be transported to its destination by the carrier, and the liability of the carrier was by the parties treated as commencing at the date of the issuance of these bills. The general rule of law upon this question is that the bills of lading issued by the carrier are not conclusive as between the parties, and are subject to explanation, to the extent that the carrier may show that in fact it has never received the property for transportation, and therefore its liability as a carrier never existed. And it is true the general rule is that there must be an actual delivery to the carrier, in order to create its common-law liability for carriage; but this does not mean, in all instances, an actual delivery. It may mean such a delivery as the parties among themselves may agree upon as sufficient, in placing the property under the control of the carrier, or the custom and habit of dealing in shipments of a particular character may establish the liability of the carrier, when in fact there has been no actual delivery."

The assignment is overruled.

The other assignments presented by appellant Gulf, Colorado & Santa Fé Railway Company raise substantially the same points as that above discussed, and are overruled.

We will now dispose of the appeal of the International & Great Northern Railway Company, hereinafter called the International.

[2] By its proposition under its first and second assignments of error, which sufficiently raises the points, appellant urges that, the shipper's intended movement of the shipment by the International not being a transportation service over its main line, under contract of shipment, for which freight charges or a division thereof could be charged by said company, and being a mere switching service from an industry over its switch tracks to the Santa Fé; without knowledge by the International of the commodity loaded, consignor or consignee, or destination, performed for the benefit of the Santa Fé, which issued the bill of lading and solely contracted for the transportation service, the International's rules governing such service, which were reasonable, were lawfully enforceable, and when not complied with by the shipper, it did not thereby hold itself out as a common carrier for the performance of such service, nor become liable as an insurer, and that the evidence being uncontradicted that the reasonable rule of the International, prohibiting the

loading of its service cars, to which it had the first right of use, for shipments in which it did not participate in the transportation service or division of freight charges, had been violated in this instance, and that the car was not accepted for shipment, the International was not an insurer of the commodity shipped, nor liable for its destruction.

[3] But for the custom existing among shippers and carriers, and as between the carriers themselves, to which we have heretofore referred, and had the undisputed proof shown the facts to be as contended in the proposition, the assignments would present a serious question. As to the contention that the rule of the International prohibiting the loading of its service cars for shipment in which it did not participate in the transportation service or division of freight charges had been violated in this instance, it is a sufficient answer that the trial court found as a fact that the International did not enforce such rule, and this finding is sustained by the testimony. It was shown that the car was a Missouri Pacific car, and was therefore a foreign or service car in the possession of the International. Witness Hilfuch testified:

"We frequently get bills of lading from shippers that are issued by industries located on the tracks of the International & Great Northern Railway Company, which shipments are to local points on the Santa Fé Railway Company's line, and which shipments are loaded into the International & Great Northern Railway Company's cars."

Besides this, it was shown that after the car was loaded and the International, through its proper agent, was notified to switch the same to the Santa Fé, it made no objection to the use of the car, but promised to switch the same.

[4] As to the contention that the car in question had not been accepted for shipment by the International after it was loaded, it is a sufficient answer that the court found as a fact that it had accepted it, and the evidence sustains the finding. The court found that under the existing custom the shipper had notified the International through its switching foreman concerning the shipment, and that the notice required by the rules of the International for it to switch the car from the industry where loaded to the Santa Fé was given and that the actual possession of the car had passed to the International. The witness Caver, who was the shipping clerk of the Industrial Rice Milling Company, and under whose superintendency the car was loaded, testified that he notified the International's switching foreman that the car was loaded, and ordered that it be pulled out over the connecting line of the Santa Fé and that the foreman replied that they had other work to do down in the yards, and they would come back in the evening; that he again, on the next day, told the foreman to get the car out,

and the latter said he would. It was also shown that in shipments of this character the International required such notice to be given by the shipper, and that the shipper gave the notice in this instance. If, then, the rule of the International, prohibiting loading of its service cars for shipments in which it did not participate in the transportation service or division of freight charges, was not enforced, it amounted to no rule which would be available to it as a defense in this case; and, as under the general custom, notice that the car was loaded was given to its proper agents, accompanied by a demand that the car be switched to the carrier over whose line the shipment was to be transported, and as such agent had agreed, without any objection to the use of the car by the shipper in the circumstances detailed, to so move the same, we think that the car passed thereby into the possession of the International, and it thereafter held such possession as a common carrier, and was liable over to the Santa Fé for the value of the goods destroyed by fire while in its possession.

[5] The third assignment complains that the court erred in finding as a fact that the International did not enforce any rule to the effect that the cars in its service should not be loaded for shipment wholly to points on another railway. We have already shown, we think, that this finding was warranted by the testimony.

The fourth assignment is sufficiently answered by what we have said in disposing of the second and third assignments.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.