GALVESTON, H. & S. A. RY. CO. v. LA TOLTECA CIA. DE CEMENTO PORTLAND, S. A. (No. 6053.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1918. Rehearing Denied June 21, 1918.)

CARRIERS ⊜138 — RELATION — DESTRUCTION OF GOODS—LIABILITY.

Where goods were consigned to place in Texas, care of third person "not for purpose of delivery," ultimate delivery being to consignee in Mexico, and it was the custom of the carrier after goods had been changed to Mexican car to transfer them across border to carrier in Mexico, payment of freight and notice to carrier by consignee that he had transferred goods to Mexican car was sufficient to render carrier liable, as a carrier, and not as warehouseman for negligent delay in transporting the car whereby goods were destroyed by fire; no formal acceptance being necessary.

Appeal from District Court, Maverick County; Joseph Jones, Judge.

Suit by La Tolteca Cia de Cemento Portland, S. A., against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, Boggess & Smith, of Del Rio, and W. B. Teagarden, of San Antonio, for appellant. David E. Hume and Sanford & Wright, all of Eagle Pass, and Lewright & Douglas, of San Antonio, for appellee.

FLY, C. J. Appellee sued for and recovered of appellant the sum of $7,290.93 for a certain carload of cement bags destroyed by fire in Eagle Pass, Tex. The cause was tried by jury and a verdict instructed for appellee. Appellant contends that, under the facts, a verdict should have been instructed for it.

The car of cement bags was shipped from St. Louis, Mo., by the Chase Bag Company, and was consigned to appellee at Eagle Pass, Tex., care of J. D. Beck; but it was recited in the bill of lading that, while the property was so consigned, it was "not for purposes of delivery." The bags were really destined for a point in Mexico, and it was the custom, in case of such shipments, to demand a Mexican car from appellant in which to transport the property to Mexico. That demand was made in this case as soon as the freight bill was delivered to Beck. It was the custom for appellant to make the transfer to the Mexican side of the Rio Grande. A Mexican car was furnished after a delay of two weeks or more, and Beck had the bags transferred to that car at once. Appellant had been notified that the transfer had been made and the car ready to be carried across the river. Appellee had done all that was required of it when the fire occurred that destroyed the car of bags. The car and bags were totally destroyed by fire. The car and its contents were in the possession of appellant when destroyed, to be transported by it across the Rio Grande.

It was customary for appellant to carry cars across the river intrusted to it for shipment to Mexico, and it had assumed this duty in this case. The duties and liabilities imposed upon it as a common carrier did not cease until it delivered the property to its connecting carrier. It negligently delayed such carriage across the river, and the car was consumed by fire through such negligence. Appellee performed every duty resting upon it in connection with the freight. All the charges had been paid. It was not intended that the bags should be delivered to appellee at Eagle Pass, and the stipulation that "for loss, damage or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or

at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only," could have no hearing on this case. It was expressly stipulated that the freight was not to be delivered. The freight never passed from the possession of appellant, but was held by it for over two weeks before it resumed its journey. Payment of the freight did not constitute a delivery of the bags.

In the case of Southern Ry. Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836, cited by appellant, the goods had been shipped from Petersburg, Va., to Edgefield, S. C., and a part of them had been taken away by the consignee. The other goods were consumed by fire, and, of course, the Supreme Court held that the liability of the company as a carrier had ceased, and that it could only be held liable for negligence as a warehouseman. Such is not the state of facts in this case. If there had been a shifting from the liability of a carrier to that of warehouseman, when the bags were transferred from the American to the Mexican car, the liability of appellant again attached, for it then became its duty to transport the car to the other side of the river. Having made it a rule to accept property thus loaded for transportation, its acceptance of the car dated from the moment that it was notified that the car was ready for shipment. "When the owner of the goods has done all in his power and all that he is required to do by his understanding with the carrier or the usage of the business to further the shipment, and it becomes then the duty of the carrier to do whatever else is necessary to put them in transitu, the deliverance and acceptance will be considered as complete from the time the carrier is informed that they are ready for him. No formal acceptance is necessary." Elliott on Railroads, § 1404; Aiken v. Railway, 68 Iowa, 363, 27 N. W. 281; London v. Rome, 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752; Railway v. Cage, 174 S. W. 855.

The testimony was positive as to delivery to appellant, and was not contradicted, and the court was justified in instructing a verdict in favor of appellee.

The judgment is affirmed.