## STRAUSS *v.* WILSON.[1]

### (*District Court, E. D. New York.* June 6, 1883.)

COMMON CARRIER—WAREHOUSEMAN—DESTRUCTION OF GOODS BY FIRE—NEGLIGENCE—BURDEN OF PROOF.

In an action brought to recover the value of goods destroyed under circumstances similar to those described in *De Grau* v. *Wilson, ante,* 698, except that on the Friday before the fire the libelants' truckman went to the pier, but did not take the goods because he was told by the delivery clerk that the whole cargo was not then discharged, but would be during the day, and no effort was made to remove the goods on that day or the next, although they were then on the pier ready to be removed, and could have been removed, *held,* that at

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

the time of the destruction of the goods they were in the possession of the defendants as warehousemen and not as common carriers, and that, in the absence of proof that the fire was caused by the negligence of the defendants or their servants, the liability of the defendants had not been made to appear, and the libel was dismissed.

In Admiralty.

*Anderson & Howland,* for libelants.

*Foster & Thomson,* for respondents.

BENEDICT, J.   This action is brought to recover of the owners of the steam-ship Rialto the value of 44 cases of chinaware, transported in that vessel from Hull to New York, and destroyed by fire at the time of the destruction of the Eagle pier, in November, 1881.   The testimony in the case respecting the origin of the fire which destroyed the goods is the same as in the action of De Grau against the same defendants, (*ante,* p. 698.)   The two cases having been tried together, what has been said, therefore, in deciding the case of De Grau upon the question of negligence is applicable in this case.   There is, however, some difference between the two cases in the facts connected with the delivery of the goods.   In the present case it appears that the goods could be removed in two truck-loads.   They came out of the ship and were duly landed on the Eagle pier, on Thursday, November 3d, and were in all respects ready for delivery at the close of business on that day.   On that day, also, the libelants entered their goods a. the custom-house, and sent to the ship a permit for their landing.   On Friday the libelants gave orders to their truckman to remove the goods.   The truckman accordingly, on Friday, went to the pier, but did not take the goods, because, as he says, he was told by the delivery clerk that the whole cargo was not then discharged, but would be during that day.   No inquiry was made for the goods at that time, nor any effort to remove them, although they were then upon the pier, ready to be removed, and could have been removed on that day.   No attempt was made to remove the goods on Saturday, but they were allowed to remain on the pier over Saturday, and until the afternoon of Sunday, when they were burned.   It thus appears that the consignees had actual notice that the goods would be upon the pier on Friday, and had more than a reasonable time to remove them before the fire occurred.

These facts compel the conclusion that at the time of the destruction of the goods they were in the possession of the defendants as warehousemen, and not as carriers.   The case is stronger than the case of *Richardson* v. *Goddard,* 23 How. 28, where the supreme court held that a deposit of cotton in proper order, made with the knowledge of the consignee, upon a pier at midday, on a week-day, in good weather, constituted a good delivery, and the ship-owner was, therefore, not responsible for the destruction of the cotton by fire on the following night.

In this case, then, as in the previous case against the same de-

fendants, it must be held, in the absence of proof that the fire was caused by the negligence of the defendants or their servants, the liability of the defendants has not been made to appear.

Let a decree be entered dismissing the libel, with costs.