UNITED METALS SELLING CO. v. PRYOR et al.

(Circuit Court of Appeals, Eighth Circuit. April 20, 1917. Rehearing Denied July 9, 1917.)

No. 4526.

1. CARRIERS ⬡140—CARRIER AS WAREHOUSEMAN—GOODS AWAITING DELIV-ERY.

Defendant railroad company, as the last connecting carrier, received a carload of copper ingots, shipped under a bill of lading providing that "property not removed by the party entitled to receive it within 48 hours * * * after notice of its arrival * * * may be kept in car * * *

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or warehouse subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only." Defendant's tariff schedule, duly filed and posted as required by law, and which, in accordance with Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380, as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 584 (Comp. St. 1916, § 8569), contained rules and regulations governing terminal privileges and charges, provided that, "when delivery of cars consigned or ordered to private industrial spur tracks cannot be made on account of the act, neglect, or inability of the consignee to receive them, delivery will be considered to have been made when the cars are tendered." On arrival of the car of copper the private track of the consignee was fully occupied, and defendant left the car on its connecting side track, and notified the consignee that the car was at its disposition, subject to the payment of a demurrage charge after the free time allowed by the rules of the company. Six days later the consignee paid the demurrage charges and the car was moved upon its track, when it was found that one of the seals was broken and that a part of the copper was gone, although, when inspected by defendant's yard watchman the evening before, the seals were secure. *Held*, that defendant's liability was that of warehouseman only.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616.]

2. **COURTS** ☜365—INTERSTATE COMMERCE ACT—LIABILITY FOR GOODS LOST——LAW GOVERNING.

The liability of a railroad company subject to the Interstate Commerce Act on a contract with an interstate shipper is not governed by state law, but is a federal question, governed by uniform rule.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971.]

3. **WAREHOUSEMEN** ☜24(1)—ACTION AGAINST FOR LOSS OF GOODS—BURDEN AND MEASURE OF PROOF.

Under the rule of the federal courts, a warehouseman is liable only for negligence, the burden of proving which rests on the party alleging it, and is not shifted by proof merely of loss or destruction of property in charge of the warehouseman.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 11, 48.]

Appeal from the District Court of the United States for the Eastern District of Missouri; Elmer B. Adams, Judge.

Suit in equity by the Equitable Trust Company of New York, as trustee, against the Wabash Railroad Company. On petition of intervention by the United Metals Selling Company against defendant and Edward B. Pryor and Edward F. Kearney, its receivers. From a decree dismissing its petition, intervener appeals. Affirmed.

Jones, Hocker, Hawes & Angert and George F. Haid, all of St. Louis, Mo., and Shearman & Sterling, of New York City, for appellant.

James L. Minnis and N. S. Brown, both of St. Louis, Mo., for appellees.

Before SANBORN, Circuit Judge, and REED and BOOTH, District Judges.

REED, District Judge. In a suit of the Equitable Trust Company of New York, as trustee, a New Jersey corporation, against the Wabash Railroad Company, a consolidated railroad corporation of Mis-

souri and other states, pending in the United States District Court for the Eastern District of Missouri, to foreclose certain mortgages upon the property of the railroad company, in which Edward B. Pryor and Edward F. Kearney were duly appointed as receivers of the property of the railroad company, the appellant, the United Metals Selling Company, a corporation, in due time filed an intervening petition claiming of the Wabash Railroad Company the sum of $2,447.60 as the value of 415 ingots or bars of refined copper, weighing 18,674 pounds, alleged to have been lost from the car in which it was shipped, while in the custody of the railroad company upon its tracks in St. Louis, Mo., consigned to the Moore-Jones Brass & Metal Company of that city, under a bill of lading issued to the intervener by the Chicago & Duluth Transportation Company at Chicago, Ill., December 6, 1909, which copper it is alleged was delivered to the railroad company at St. Louis and lost from the car in which it was shipped while in its custody, about January 7, 1910, solely through the negligence, carelessness, and wrongful acts of the defendant railroad company; and judgment is prayed against the railroad company for the value of said copper, with interest from January 7, 1910, and that it be decreed a lien upon the property of the railroad company or its proceeds in the custody of the court, prior to the complainant's mortgage upon said property.

The railroad company and the receivers answered the intervening petition, admitting that about December 6, 1909, the intervener shipped some 40,000 pounds of refined copper from Chicago, to the Moore-Jones Brass & Metal Company at St. Louis, by the Chicago & Duluth Transportation Company and connecting carriers, but denies that it was lost, if lost at all, because of any neglect or fault upon the part of the railroad company, and further allege that the defendant railroad company on December 30, 1909, received the car containing said copper from the Terminal Railroad Association of St. Louis, and on January 1, 1910, notified in writing the consignee, Moore-Jones Brass & Metal Company, of the receipt thereof, and thereafter held said car as a warehouseman only, and not as a common carrier. Some other defenses may be noticed in the course of the opinion.

The matter was submitted to the special master in said foreclosure proceedings upon a stipulation of facts, which so far as deemed material is set forth in the margin.[1]

---

[1] STIPULATION OF FACTS.

"That on or about December 6, 1909, the intervener shipped 775 copper ingot bars, of the weight of 40,002 pounds, from Chicago, Illinois, to the Moore-Jones Brass & Metal Company at St. Louis, Missouri, under a bill of lading contract of shipment entered into between the Chicago & Duluth Transportation Company, a common carrier, and the intervener, dated Chicago, Illinois, December 6, 1909, a copy of which is hereto attached, made a part hereof and marked Exhibit 'A.'

"The bill of lading, Exhibit A is the uniform bill of lading—standard form of straight bill of lading, approved by the Interstate Commerce Commission by order No. 787 of June 27, 1908, and includes a receipt which recites that, subject to the classifications and tariffs in effect on the date of its issue, December 6, 1909, it received from the United Metals Selling Company the

1. The master filed with the court his findings and recommendations as follows:

" *   *   * The [intervening] petition alleges that about December 6, 1909, the petitioner shipped 775 ingots of refined copper, weighing 40,002 pounds

property described below, 775 copper ingot bars, weight 40,002 pounds, signed, 'Chicago & Duluth Transportation Company, B. L. Burke, Traff. Agt., Chicago, Ill.,' consigned to Moore-Jones Brass & Metal Company, St. Louis, Mo., and that said company agrees to carry to its usual place of delivery at said destination, if on its road; otherwise, to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all ·or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns.

*     *     *     *     *     *     *     *     *     *

"Indorsed on the back of the bill, Exhibit A, is the following:

*     *     *     *     *     *     *     *     *     *

" 'Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse, at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges including a reasonable charge for storage.'

"That the copper covered by the bill of lading was placed in Illinois Central car No. 130479 at Chicago; each of the doors of the car being sealed after the car was loaded and contents checked. That the car was carried by the Illinois Central Railroad Company to East St. Louis, where it was examined, seals found intact, and delivered to the Terminal Railroad Association of St. Louis. The Terminal Railroad Association transported the car across the river and turned the same over to the Wabash Railroad Company, at St. Louis, at which time the car was again examined and the seals found unbroken. The car was then carried by the Wabash Railroad Company to its yards, and for the reasons hereinafter stated the car was placed on its track No. 24, December 30, 1909, with seals intact. On January 1, 1910, the car was transferred to track No. 25, and the following notice was then mailed to the consignee, Moore-Jones Brass & Metal Company, and received by said company: 'You are hereby notified that the following cars are now on tracks at this station for your unloading or disposition and that said cars are subject to a charge of $1.00 per day or fraction of a day, for all time that they are held beyond the free time allowed by the rules of this company.' That said notice contained the number of the car containing the shipment involved in this case, and otherwise complied with the tariff requirements of the Wabash Railroad Company, lawfully in effect at that time. That the tariff of the Wabash Railroad Company, providing the rules and regulations and charges governing the assessment of demurrage and storage charges, and during all of said times on file in the office of the Interstate Commerce Commission at Washington, in the District of Columbia, and duly posted as required by law, provided as follows: 'When delivery of cars consigned or ordered to private industrial spur tracks cannot be made on account of the act or neglect of the consignee or the inability of the consignee to receive, delivery will be considered to have been made when the cars were tendered. The carrier's agent must give the consignee written notice of all cars he has been unable to deliver, because of the condition of the private industrial track or because of other conditions attributable to consignee, this will be considered a constructive placement.'

"The consignee paid to the Wabash Railroad Company $4.00 for demurrage

from Chicago, Ill., to the Moore-Jones Brass & Metal Company in St. Louis, under a bill of lading issued by the Chicago & Duluth Transportation Company to the petitioner, dated at Chicago, December 6, 1909. This is admitted by the defendants. It is alleged that the car containing the copper was delivered by the Terminal Railroad Company of St. Louis to the defendant railroad

charges lawfully assessed on said car under the tariffs aforesaid, and covering four days next subsequent to the expiration of the forty-eight hours allowed as free time for unloading; that said demurrage charges accrued while said car was held by the Wabash Railroad Company on said track No. 25. That during all of the time said car was held by the Wabash Railroad Company on said track No. 25, the same was reasonably accessible to the consignee, Moore-Jones Brass & Metal Company, for unloading, but it had been the uniform custom of the said consignee to unload cars only when placed upon its industrial spur track.

"The consignee, Moore-Jones Brass & Metal Company, had a private industrial spur track to its plant upon which it received carload shipments consigned to it. That said switch track was just of sufficient length to accommodate two cars, and was occupied by loaded cars at the time the above car was received by the Wabash Railroad Company. That under an arrangement between the Wabash Railroad Company and the said consignee, then in effect, all cars received by the said railroad company consigned to said consignee were to be placed by the Wabash Railroad Company on said private industrial spur track of said consignee, in the order in which said cars were received by the Wabash Railroad for such placement. That on January 1, 1910, the said Wabash Railroad Company was holding on its tracks seven cars for said consignee, all of which had been received prior to the receipt of said car of copper ingots. That on January 2, 1910, the said Wabash Railroad Company was holding out for said consignee, under same conditions, seven cars, and seven cars on January 3d, six cars on January 4th, nine cars on January 5th, nine cars on January 6th, eight cars on January 7th, and five cars on January 8th, all of which cars the Wabash Railroad Company had been unable to place on consignee's private industrial spur track, on account of said track being filled with other cars. That said consignee had no means of clearing its switch track, but, after emptying a car had to wait until the Wabash Railroad Company removed the car from said spur track.

"The Wabash Railroad Company employed during the times stated two watchmen in the yard where the car in question was located. The territory assigned to such watchmen covered six city blocks, within which there were from 9 to 19 tracks, of a combined length of about 30,000 feet. That one of said watchmen examined said car and the seals thereon at about 5 o'clock p. m., of January 6, 1910, and found all seals intact. The car in question was actually placed on consignee's private industrial spur track on the morning of January 7, 1910, at 10:30 a. m., and the same was immediately examined by the receiving clerk of the consignee, who found there was no seal on the west side door. It was also examined by two other employés of consignee, who also found there was no seal on the west side door. The consignee thereupon notified a watchman of the Wabash Railroad Company, and also requested the office of the freight agent of the Wabash Railroad Company to send a man to check the contents of the car. Immediately upon the discovery that the west side door contained no seal, the consignee caused the car to be locked, and the car remained so locked until the next day, January 8, 1910, when an employé of the Wabash Company appeared and checked the contents. On such checking the car was found to contain 415 copper ingots, weighing 21,328 pounds, instead of 775 ingots, weighing 40,002 pounds.

"That the reasonable market value of the missing 18,764 pounds of copper ingots was the sum of $2,447.60.

"[Signed]     Wells H. Blodgett,
"N. S. Brown,
                "Attorneys for Wabash Railroad Co.
"Jones, Hocker, Hawes & Angert,
          "Attorneys for Intervener."

company about January 2, 1910, with the seals of the car intact; that thereafter, about January 7, 1910, the car was delivered by the defendant railroad company to the Moore-Jones Brass & Metal Company, but that at the time of the delivery the seal of the west side door of the car was missing, and the car contained only 415 ingots of copper, weighing 21,328 pounds, which was 18,674 pounds less than the car contained when it was delivered to the defendant railroad company. This allegation is disputed and denied by the defendants, who aver that the Terminal Railroad Company did not deliver the car until December 30, 1909, and that the delivery by the Wabash Railroad Company to the Moore-Jones Brass & Metal Company was made on the 2d of January, 1910, instead of the 7th of January. The defendants also dispute the averment as to the seals, and as to the loss of copper from the car. It is alleged and admitted that the petitioner lodged its claim with the defendant railroad company on account of its alleged loss about January 20, 1910, and thereafter made repeated demands upon the railroad company for the settlement of the claim. There are averments as to repeated efforts to adjust the claim between the parties, prior to the receivership and since; but these matters are not considered material by the undersigned, in view of the conclusions which he has reached upon the merits of the controversy. * * *

"Upon the facts submitted to me, which are altogether covered by stipulation herewith returned, I find that the defendant railroad company effected a complete delivery of the shipment to the consignee, Moore-Jones Brass & Metal Company, because of the provisions of the tariff of the Wabash Railroad Company, under which delivery must be considered to have been made when the car was tendered by the railroad company to the consignee. The car containing the copper was carried by the Wabash Railroad Company to its yard and placed on its track No. 24 on December 30, 1909, with seals intact. On January 1, 1910, the car was transferred to track No. 25 and the consignee was notified that the car was on the track for its unloading or disposition. This notice was given by reason of condition of tracks on which car was being held by the railroad company for the consignee.

"Finding, as I do, that the delivery of the car was made by the railroad company for the consignee, it is unnecessary to consider whether any liability was attached to the defendant railroad company as a warehouseman. I accordingly recommend that the intervening petition be dismissed.

"[Signed]　Chester H. Krum, Special Master."

The court overruled intervener's exceptions to the findings and report of the master, and entered a decree dismissing its petition, and it prosecutes this appeal to reverse such decree.

The appellant assigns as error that under the facts stipulated the master and court erred in finding and holding:

[1] (1) That under the bill of lading and tariff schedules of the carriers, filed with the Interstate Commerce Commission and duly posted, the tender of the car containing the copper by the defendant railroad company to the consignee Moore-Jones Brass & Metal Company on January 1, 1910, effected a delivery of the copper to the consignee and relieved the railroad company of any further liability as a common carrier for the copper.

The bill of lading and tariff schedules in unmistakable terms provide:

"Sec. 5. That property not removed by the party entitled to receive it, within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may at the option of the carrier be removed to and stored in a public or licensed warehouse, at the cost of the owner and there held at the owner's risk and without liability

on the part of the carrier and subject to a lien for all freight and other lawful charges including a reasonable charge for storage."

The car containing this copper was received by the Wabash Railroad Company in St. Louis from the Terminal Railroad Company December 30, 1909, and placed on one of its tracks (No. 24) in its yards, on January 1, 1910, and was transferred to track No. 25 in the same yard, and the consignee notified in writing that the car was there for its unloading or other disposition subject to a charge of $1 a day or fraction thereof for all time that it should be held beyond the free time allowed by the rules of the company for unloading. The tariff of the Wabash Company, then on file with the Interstate Commerce Commission and duly posted as required by law, provides:

"That when delivery of cars consigned or ordered to private industrial spur tracks cannot be made on account of the act, neglect, or inability of the consignee to receive them, delivery will be considered to have been made when the cars are tendered. The carrier's agent must give the consignee written notice of all cars it has been unable to deliver, because of the condition of the private track, or of other conditions attributable to consignee; this will be considered a constructive placement."

Such was the contract between the appellant, the consignee, and the Wabash Railroad Company; and the consignee paid to the Wabash Railroad Company $4 for demurrage charges on this car under such schedules, covering the 4 days next succeeding the 48-hour period allowing for unloading, which demurrage accrued while the car was held by the Wabash Company on its track No. 25.

The act to regulate commerce as amended to and including June 29, 1906, provides in effect (section 1) that "transportation," which the act regulates, shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership, or of any contract express or implied for the use thereof and all services in connection with the receipt, delivery, elevation, transfer in transit, ventilation, or storage, and handling of property transported; and it shall be the duty of every carrier, subject to the provisions of the act, to provide and furnish such transportation upon reasonable request therefor, and to establish just and reasonable rates, and provide for reasonable compensation to those entitled thereto; also that all charges made for any service rendered or to be rendered in such transportation or in connection therewith, shall be just and reasonable. And section 6 requires that the carrier's schedules filed with the Commission shall be printed and posted, and shall contain the classification of freight in force, and also state separately all terminal charges, storage charges, and other charges which the Commission may require, all privileges or facilities granted or allowed, and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such rates, fares, and charges, or the value of the service rendered to the consignee. 34 Stat. c. 3591, pp. 584, 586; U. S. Compiled Stats. 1916, §§ 8563, 8569.

The bill of lading in this case, in accordance with the provisions of the act, provides that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein con-

tained, among which is the express condition (as appears in the stipu-' lated facts) that the responsibility of the Wabash Railroad Company shall be that of warehouseman only for the property, if not removed by the consignee from its tracks within the 48-hour period for unload-ing, after notice of the arrival of the car, in which the copper was shipped, in its yard at St. Louis. Under the recent decision of the Su-preme Court in Southern Railway Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836, it must be held that the liability of the Wabash Railroad Company in this case, under the agreed facts, was that of warehouseman only.

[2, 3] (2) The appellant next complains of the decree because it did not adjudge the Wabash Company liable (under the facts stipulated) as a warehouseman. This complaint might well be dismissed, for the reason that appellant seeks to recover from the railroad company upon the ground alone of its liability as a common carrier, and there is no claim or sufficient proof that it has incurred any liability as a ware-houseman. True, the intervener's petition asks for such other and further relief as may be just; and the answer alleges that under the facts the liability of the Wabash Company, if any, is that of a ware-houseman only. But that is not sufficient to enable the appellant to recover in the absence of proof by it of the negligence it charges against the railroad company whereby the copper was lost from the car. The appellant, however, maintains in argument that, having shown the loss of the copper from the car (or other grounds from which it might be inferred that it was stolen from the car), a prima facie case of negligence is shown against the defendant, and that the burden then shifts to it to show its freedom from negligence, and cases from certain of the state courts, including Missouri, are cited in support of this contention. But an equal or greater number of deci-sions from the courts of other states may be cited to the contrary. But this question is hardly open to debate in this court, for in the case of Southern Railway Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836, above, it is directly held that the rule of the Supreme Court of the United States itself is, under the act to regulate commerce, opposed to the contention of the appellant. In that case the same con-tention was made by the appellee as is made by the appellant here, and the Supreme Court said:

"Viewing the contract set forth in the bill of lading [in that case] as still in force, the measure of liability under it must also be regarded as a fed-eral question. As it has often been said, the statutory provisions manifest the intent of Congress that the obligation of the carrier with respect to the services within the purview of the statute (the act to regulate commerce) shall be governed by uniform rule in the place of the diverse requirements of state legislation and decisions [citing many cases]. And the question as to the responsibility under the bill of lading is none the less a federal one because it must be resolved by the application of general principles of the common law. * * * It was explicitly provided that in case the property was not removed within the specified time it should be kept subject to lia-bility 'as warehouseman only.' The railway company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the ware-houseman to deliver upon proper demand, his failure to do so, without ex-cuse, has been regarded as making a prima facie case of negligence. If, how-

ever, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff having the affirmative of the issue must go forward with the evidence [citing a number of cases]. * * * It is undisputed that the loss was due to fire which destroyed the company's warehouse with its contents, including the property in question. The fire occurred in the early morning, when the depot and warehouse were closed. The cause of the fire did not appear, and there was nothing in the circumstances to indicate neglect on the part of the railway company. The trial court denied the motion [of the railway company] for a direction of a verdict and charged the jury that 'the burden of showing that there was no negligence is on the defendant.' Applying the rule established by the state decisions, * * * the Supreme Court of the state overruled the defendant's objection and sustained the judgment. * * * It has been recognized by the state court, as was said in the Fleischman Case, supra [Fleischman v. Southern R. Co., 76 S. C. 237, 56 S. E. 974, 9 L. R. A. (N. S.) 519], that the rule it applies is a 'somewhat exceptional rule' to which the court adheres 'notwithstanding the great number of opposing authorities in other jurisdictions.' * * * For the reasons we have stated, we think that the obligation of the railway company was not governed by the state law and that, in this view, the exceptions of the plaintiff in error were well taken."

The judgment was reversed. See Clark v. Barnwell et al., 12 How. 272, 13 L. Ed. 985; Railroad Co. v. Reeves, 10 Wall. 176, 19 L. Ed. 909; De Grau v. Wilson (C. C.) 22 Fed. 560, affirming (D. C.) 17 Fed. 698 (in admiralty); Strauss v. Wilson (D. C.) 17 Fed. 701 (in admiralty); Lamb v. Camden & Amboy, etc., Co., 46 N. Y. 271, 7 Am. Rep. 327; Denton v. Railway Co., 52 Iowa, 161, 2 N. W. 1093, 35 Am. Rep. 263; Yazoo & M. Valley R. Co. v. Hughes, 94 Miss. 242, 47 South. 662, 22 L. R. A. (N. S.) 975, and note.

There is no evidence that the car, or the seal upon the west door thereof, were insufficient or defective in any respect; and the inference that the seal was broken and the copper stolen from the car was not sufficient to warrant a finding that the copper was lost because of any neglect or want of ordinary care upon the part of the railroad company as warehouseman.

It follows that the decree of the District Court must be and is affirmed.