# CHARLESTON.

SANTE DEL SIGNORE v. JOHN BARTON PAYNE, AGENT, ETC.

Submitted October 11, 1921.  Decided October 18, 1921.

1. COMMERCE—*Provisions of Uniform Bill of Lading Held Binding as to Interstate Shipments.*

    The provisions of the "Uniform Bill of Lading—Adopted by Carriers in Official Classification Territory, effective January 1st, 1916," when employed, constitutes the contract between the parties to an interstate shipment and is binding upon them in determining their respective rights growing out of such interstate shipment.  (p. 276).

2. CARRIERS—*Uniform Bill of Lading Gives 46 Hours After Notice to Owner of Arrival Before Liability as Carrier Ceases and That of Warehousemen Begins.*

    Section 5 of the conditions contained in such Uniform Bill of Lading, properly construed, gives the owner forty-eight hours ofter notice by the carrier of the arrival of the goods, within which to remove the goods before the liability of the carrier as such ceases and its liability as warehouseman begins.  (p. 277).

3. CASES HELD INAPPLICABLE TO INTERSTATE SHIPMENTS.

    Our cases of *Berry et al.* v. *W. Va. & P. R. R. Co.*, 44 W. Va. 538; *Hurley & Son* v. *N. & W. Ry. Co.*, 68 W. Va. 471; and *Hutchinson* v. *U. S. Express Co.*, 63 W. Va. 128, are inapplicable to interstate shipments made pursuant to the contract contained in such Uniform Bill of Lading.  (p. 278).

Error to Circuit Court, Tucker County.

Action by Sante Del Signore against John Barton Payne, Director General of Railroads, begun in the justice court. The circuit court directed verdict and judgment for defendant. Plaintiff's motions to set aside the verdict and for new trial were denied, and he brings error.

*Reversed and remanded.*

*J. W. Harman,* for plaintiff in error.
*E. A. Bowers,* for defendant in error.

MILLER, JUDGE:

The controversy is over the alleged liability of the defendant to plaintiff for the total loss of one hundred cases of beverage shipped by the Cumberland Brewing Company, December 19, 1918, from Cumberland, Maryland, over the Western Maryland Railway, and consigned to plaintiff at Thomas, West Virginia.

On the trial of the action below, upon appeal from the judgment of a justice, at the conclusion of plaintiff's evidence, the court sustained defendant's motion to strike out the evidence and directed a verdict for him, and the judgment of *nil capiat* now complained of followed the verdict so directed. And the circuit court also denied plaintiff's motion to set aside the verdict as contrary to law and the evidence and to grant him a new trial.

The contract of shipment was contained in the bill of lading issued to the shipper, and purporting on its face to be "Uniform Bill of Lading—Adopted by Carriers in Official Classification Territory, effective January 1st, 1916." Section 5 of the "Conditions" contained in this bill of lading, a part of plaintiff's evidence, among other things provides: "Sec. 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in a car, depot, or place of delivery of the carrier or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and

there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage.''

The other evidence of the plaintiff, oral and documentary, shows that the goods sued for were valued at $240.00; that having been shipped December 19, 1918, they did not arrive at their destination until January 2nd, and were not unloaded until January 3, 1919; and the plaintiff was not given notice of the arrival until the morning of January 4, 1919, after they had been frozen and rendered absolutely worthless; and for this reason he refused to receive them. It does appear that some workmen at the railroad station had told plaintiff's driver on the afternoon of January 2nd, that the goods were in the car on the sidetrack, with other cars, but not unloaded; but plaintiff was not advised of the unloading of the car until the morning of January 4th, after the goods had been destroyed. At that time the forty-eight hours given by the bill of lading for removal of the goods, considering the notice to the drayman on the afternoon of January 2nd as notice to the plaintiff, had not yet elapsed, and of course this time had not elapsed after the agent's notice to plaintiff on January 4th, and the question presented by the evidence was whether the liability of defendant as carried continued for the forty-eight hours, or was at the time the goods were destroyed only that of warehouseman. We find that the proper construction of said Section 5 of the Uniform Bill of Lading was before the Supreme Court of the United States in the recent case of *Michigan Cent. R. R. Co.* v. *Mark Owen & Co.,* 41 Sup. Court Rep. 554, where it was held that the liability of the carrier as such continued during the whole of the forty-eight hours. And in that case it was held that the fact that the owner had had notice of the arrival of the goods and that they were in the car on the sidetrack, and that he had broken the seals on the car and had commenced the unloading of the goods made no difference, and that the goods having been destroyed by fire in the meantime, the carrier continued liable as such for their loss. In the case at bar it is conceded that the forty-

eight hours had not elapsed from January 4th, when the plaintiff had his first notice from defendant's agent of the arrival of the goods, and the jury would have been justified in finding from the evidence that the period had not elapsed from the time plaintiff's drayman learned of the arrival of the goods from the employees of defendant at the railway station on January 2nd.

To support the finding and judgment of the circuit court defendant's counsel rely on our cases of *Berry et al.* v. *W. Va. & P. R. R. Co.,* 44 W. Va. 538; *Hurley & Son* v. *N. & W. Ry Co.,* 68 W. Va. 471; and *Hutchinson* v. *U. S. Express Co.,* 63 W. Va. 128. These cases are not pertinent to the case presented here. Neither of them involved the proper construction of the Uniform Bill of Lading constituting the special contract between the shipper and the carrier here relied on. The shipment in question was an inter-state shipment, and the federal not the state law applies. *United Metals Selling Co.* v. *Pryor,* 155 C. C. A. 621; *Dodge & Dent Mfg. Co.* v. *Penn. R. R. Co.,* 175 App. Div. Sup. Ct. (N. Y.) 823.

Moreover, if the liability of the defendant as carrier had ceased and that of warehouseman had begun when the goods were destroyed, it is an open question whether a proper construction of Section 1 of the bill of lading does not cast the burden of proving freedom from negligence on the carrier in possession of the goods. One of the provisions of that section is: "When in accordance with general custom, on account of the nature of the property, or when at the request of the shipper the property is transported in open cars, the carrier or party in possession (except in case of loss or damage by fire in which case the liability shall be the same as though the property had been carried in closed cars) shall be liable only for negligence, and the burden to prove freedom from such negligence shall be on the carrier or party in possession." The history of the adoption of this Uniform Bill of Lading will be found in 14 Interstate Commerce Commission Reports (1908) p. 346.

For these reasons we conclude that the court below erred in excluding plaintiff's evidence and directing a verdict for de-

fendant, and that the judgment ought to be reversed, the verdict set aside, and the plaintiff awarded a new trial, and such will be the judgment entered here.

*Reversed and remanded.*