## SALOMON STERN, LIMITED, OF AMERICA v. DAVIS, Director General.

### (District Court, S. D. New York. August 6, 1923.)

1. **Carriers ⊚ᵂ140—Liability after time specified is that of warehouseman and depends on reasonable care.**

   Where time specified by law within which carrier was responsible as such expired before wrong delivery, its liability was that of warehouseman and depended upon reasonable care alone.

2. **Carriers ⊚ᵂ94(3)—Burden of proof as to negligence in making wrong delivery rests on plaintiff.**

   Though, in action against carrier for wrong delivery made while holding goods as warehouseman, plaintiff made prima facie case by showing bailment and loss, in the end, the burden of proof as to negligence rested upon it.

3. **Carriers ⊚ᵂ93—No negligence in not having person to whom paid freight bill issued sign his name thereon for purpose of future identification.**

   Where carrier's practice, upon surrender of arrival notice and letter from consignee authorizing delivery, was to issue paid freight bill, enabling holder to obtain delivery, it was not negligent in not having person receiving the freight bill sign his name thereon at the time in order that delivery clerk might identify him by comparison of signatures.

4. **Carriers ⊚ᵂ93—Not liable for wrong delivery when consignee's agent loses freight bill enabling him to obtain delivery.**

   Where consignee's agent loses paid freight bill, production of which entitles holder to delivery of goods, carrier should not be charged with negligence in making wrong delivery, at least where it was not at once advised.

5. **Carriers ⊚ᵂ94(3)—Evidence held insufficient to show person presenting arrival notice and letter authorizing delivery was not consignee's agent.**

   In action for wrong delivery, evidence *held* insufficient to show that person presenting arrival notice and letter from consignee authorizing delivery, and to whom carrier issued paid freight bill which enabled holder to obtain delivery, was not consignee's agent.

At Law. Action by Salomon Stern, Limited, of America against James C. Davis, Director General, tried before a jury of one by stipulation in open court. Verdict directed for defendant.

Dallas S. Townsend, of New York City, for plaintiff.

James A. Dilkes, of New York City, for defendant.

LEARNED HAND, District Judge. This action is to recover damages for the misdelivery by the defendant, as agent of the Pennsylvania Railroad Company, of two parcels of goods shipped from Pennsylvania to New York and arriving at the New York wharves of the railroad on July 3, 1919. In accordance with the custom of the carrier in such cases, arrival notices were sent to the consignee, who received the same, and on July 7th wrote two "letters of authority," as they are called, directing the carrier to deliver the same to B. Disbrow, a truckman.

The practice of the carrier in making such deliveries is to station a cashier at a wicket and, when the arrival notice with letter of authority is presented, to take up both documents and issue in their place a paid freight bill to the person presenting the same, without payment

⊚ᵂFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in case the freight is prepaid (as in the cases at bar), and upon payment of the freight due in cases where it has not been paid. The truckman so receiving the paid freight bill then takes it to the wharves and, on presenting the same to the delivery clerk in charge, receives the merchandise upon his truck. At the time of so receiving it, he signs a delivery receipt which he surrenders to the delivery clerk and then goes off with the goods.

[1] There is no proof of the delivery by the plaintiff of arrival notices with letters of authority to Disbrow, though they were issued. Some person on July 7th presented two arrival notices with the letters of authority to the cashier at the wicket and got the usual prepaid freight notices. On July 8th, the thief having got possession of the paid freight receipts in a manner not disclosed, took them to the wharf, signed delivery receipts in the name of W. Barron, and took away the goods. The question is whether the carrier was liable for negligence in making the delivery. As the time specified by law within which the carrier was responsible as such expired on July 7th, the case is to be treated as one involving only the liability of the carrier as warehouseman, and therefore depends upon reasonable care alone. So. Ry. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836; U. S. Metals Selling Co. v. Pryor, 243 Fed. 91, 155 C. C. A. 621 (C. C. A. 8).

Herman Simon, who received the arrival notices and wrote the letters of delivery, was a clerk temporarily employed in the office of the plaintiff. Jack Malvin was an office boy, likewise temporarily employed. Simon swears he gave Malvin the documents, and Malvin swears that he delivered to Disbrow personally all papers which Simon gave him. Disbrow kept records in a notebook of all such documents when received, and among them do not appear on that day the two arrival notices with their accompanying letters of authority, although others so received on that day do appear. John Fouls, a truckman regularly employed at the time by Disbrow, on July 7th received from Disbrow an arrival notice with written authority thereupon, of a parcel of goods to pick up for the Darnless Hosiery Company, another consignee. This paper he took to the carrier's cashier at the wicket, paid the freight, and received a paid freight bill, which he kept until the 8th. On that day he received the parcel therein mentioned, signed a receipt, and duly delivered the parcel to the Darnless Hosiery Company. William J. More was the carrier's clerk at the wicket. He swears that it was his invariable custom when several arrival notices with letters of authority were presented at the same time, to put them together, fold them once, and thus folded file them in their order. Two or three weeks after the discovery of the theft, More and a police lieutenant examined the file and found the arrival notices with letters of authority for the parcels in question, and the arrival notice of the Darnless Hosiery Company laid together and folded once in a single bundle. From this More swears that the three documents were presented at the same time.

Fouls, on the other hand, swears that he presented only the notice of arrival of the Darnless Hosiery parcel and never had possession

of the arrival notices for the parcels here in question. Barron cannot be traced, and Disbrow swears that he never had such a truckman in his employ. When Simon signed the letters of authority at the bottom of one, a typist wrote the initials, "HS–CC," indicating that Simon had dictated the letter which he signed. The carbon copy retained by the plaintiff shows that these initials have been erased. The letter of authority for the other parcel contained no initials of Simon, as of course did not the carbon copy.

[2] The law in this case is not in dispute. Both sides agree that under the cases cited the defendant's responsibility depends wholly upon negligence. Further, although the plaintiff makes a prima facie case by showing the bailment and the loss, in the end the burden of proof as to negligence must rest upon it. The plaintiff assert two grounds of negligence: First, that the person who presented the arrival notices and letters of authority was not duly authorized by Disbrow as required by the letters of authority; second, assuming, as the defendant contends, that this person was Disbrow's truckman, Fouls, the carrier's method was negligent in delivering goods, because no care was taken to ascertain that the person delivering the paid freight bill was the same person who had received it at the time of delivering the arrival notice. They suggest, for example, that a proper practice would be to require the person presenting the arrival notice to sign his name to the paid freight bill, his signature to be compared on receiving the goods with that which he wrote upon the receipt. I shall take up these points inversely.

[3, 4] I think the standard of care suggested by the plaintiff in its second point too severe. Assume that the arrival notice and letter of authority is indeed presented by the proper truckman. The paid freight bill, which is thereafter treated as an order to be honored on presentation, comes into the hands of the consignee's agent duly authorized to receive the goods. Suppose he loses it; if so, it is a negligence of that agent, and for that I submit the carrier should not be charged. Moreover, it is fair to require that the carrier be at once advised so as to stop delivery. If the carrier receives no such notice, is it to inquire into the identity of the person presenting the paid freight bill with the agent who received it? I cannot think that a reasonable burden to impose. How is the carrier to do so? The conditions of the business prevent any actual proof of identity unless it be by signature. The truckmen come in droves and no personal identification is possible.

To meet this the plaintiff says that the truckman should sign the paid freight bill at the wicket so that the delivery clerk could compare that signature with that required on the delivery receipt. In the first place, I should doubt whether all truckmen could write a legible signature. Passing that, if they could, it would require of delivery clerks more than such men are ordinarily capable of doing to ask them to identify the two signatures. I will not say that such a practice might not stop some thefts, but it seems to me that it would not stop many. There is no reason to assume that it would have stopped this. A thief would not stick at signing Fouls' name on the delivery re-

ceipt, if it had been on the paid freight bill, and it is mere assumption to say that a man like di Fazio could have detected the forgery. The suggestion appears to me to involve an impediment disproportionate to any security which would follow it.

Suppose that instead of losing the paid freight bill, the consignee's agent chooses to defraud him. Surely that fraud is not upon the carrier; it is the treachery of the consignee's own agent. These are the only two possibilities which seem to be open; in neither case do I think the carrier properly chargeable with neglect.

[5] The plaintiff's first point may be divided into two parts; one, of fact, and the second of fault. Has plaintiff shown that the person who presented the arrival notices was not Fouls? I think not. It is quite clear that Fouls' memory at the end of four years is not reliable. He has daily engaged in many similar dealings, and to expect him to remember any particular transaction would be impossible. Moreover, his memory is shown to be at fault in this very case, for he says that he always carried away his freight on the same day that he got his paid freight bill, while the documentary evidence proves that in the case of the Darnless Hosiery parcel he did not take it up until the next day. Against his mere memory we have the fact that the papers were found so folded as, according to More's practice, showed that they were presented by one man. I call it a fact, because I cannot see that More has any motive to fabricate. He was chargeable with no neglect in any event. He and Thompson found them together when investigating the theft, two or three weeks later; that stamped it on his memory, quite naturally. His practice to fold in one all papers presented together is to my mind strong proof that these were so presented. That conclusion is borne out by the testimony of Simon that he gave these very papers to Malvin, and Malvin that he gave them to Disbrow. I agree that the chances are all that Disbrow did not personally get them; but, if I were to guess, I should be forced to believe that Malvin gave them to Fouls. It is, however, quite enough that the plaintiff has failed to show that Fouls did not present them. If he did, as Fouls was Disbrow's truckman, and the letters directed delivery to Disbrow, the defendant was not negligent whatever the fraud, or whoever was involved in it.

We have to account for a theft, deliberately planned. The theory which best reconciles all the evidence is that Malvin delivered the notices of arrival and letters of authority to Fouls, who got the paid freight bills at the same time when he presented the Darnless Hosiery Company notice of arrival, and later gave them to a confederate who signed as W. Barron. This does implicate Simon, Malvin, and Fouls; but even so, it avoids more difficulties than any other hypothesis I can make. Fouls appeared well; I hesitate to charge him. Indeed, I do not do so except as a tenable supposition. I did not so much like Simon or Malvin. They were only temporarily in the plaintiff's employ, and Malvin might naturally follow Simon's lead, who was older. Simon would know, and he alone, the value of the parcels.

Again, while I know that there is danger of exaggerating what may be a trivial detail, I am a little influenced by Simon's erasure of his

initials on the copy of that letter of authority which alone bore them. I say that Simon did it, for it is clear that no one else had any motive to do so. Why should he? I confess I can think of no reason except to dissociate himself from the transaction. True, it was a fatuous effort, for the original was on file at the railroad's office and both letters he signed; but perhaps he did not know that they were delivered to and kept by the railroad. In any case, it was certainly suspicious conduct and intended to throw off inquiry from Simon himself. Further, it is to be noted that Fouls insisted that he never kept paid freight bills over night or turned them in the next day. If it was his custom not to do so, the exception in this instance may have some significance.

It is, of course, plain that there is not the basis here for a finding; on the other hand, it seems to me plain that the plaintiff has not succeeded in showing that the defendant gave out the paid freight bills to another person than Disbrow's truckman. That it must do to maintain the first point raised.

Finally, if it be said that the documents may have been lost by Malvin or Fouls, the answer is that, if so, it was negligence directly contributing to the loss, as well as the failure to notify the defendant promptly. Such negligence would bar an action at law like this, even if the defendant were itself also negligent. I have already said that I should not hold it negligent if it was Fouls who lost the paid freight bills. If the notices of arrival were lost, there may be a difference. Possibly, the defendant was not justified in honoring arrival notices with letters of authority by whomever presented, though so far as I can see the same considerations apply as do to the paid freight bills. There is little or no practical possibility of identifying the truckman who comes to the wicket as the truckman of any especial trucking company, and it would appear a severe rule to say that such identification was necessary. But, as I have found that the plaintiff has failed in its proof on the question of fact, I need not positively decide the question of fault.

Verdict directed for the defendant.