## SOUTHERN RAILWAY COMPANY v. PRESCOTT.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 358.   Argued February 23, 1916.—Decided April 10, 1916.

Whether the contract based on a bill of lading of an interstate shipment issued pursuant to the Act to Regulate Commerce has been discharged is a Federal question.

Transportation, as regulated by the Act to Regulate Commerce, includes the services of a connecting carrier as warehouseman of the goods after arrival at point of destination and before actual delivery to the consignee.

Retention by the carrier of part of an interstate shipment, after arrival at destination, notice to, and payment of the freight by, the consignee, *held* in this case to be a terminal service forming part of the transportation in the sense of, and governed by, the Act to Regulate Commerce.

With respect to service governed by the Act to Regulate Commerce, the rule that both carrier and shipper are bound by, and cannot alter, the terms of service as fixed by the filed regulations, applies

not only to rates but also to other stipulations relating to services and facilities within the purview of the act, including liability as warehouseman after arrival of the goods at destination and before removal by the consignee.

The contract of a bill of lading of an interstate shipment is still in force until actual delivery to the consignee; and *held* that the mere giving of a receipt by the consignee and payment of freight but leaving the goods with the carrier did not, in this case, amount to actual delivery and affect the liability of the carrier under the stipulations as to liability contained in the bill of lading.

The measure of liability of a carrier of an interstate shipment under the bill of lading issued pursuant to the Act to Regulate Commerce is a Federal question and the obligation is to be governed under the Act by uniform rule in the place of the diverse requirements of state legislation and decisions; nor is the question less a Federal one because resolved by application of general principles of common law.

Under a stipulation in a bill of lading of an interstate shipment that the carrier shall be liable, as warehouseman only, for goods after arrival at destination and not removed within the specified time, the carrier is liable only for negligence; and if the loss admittedly occurs by fire the burden is on the plaintiff to prove negligence, notwithstanding the rule may be different under state law.

99 So. Car. 422, reversed.

THE facts, which involve the liability of an interstate carrier as warehouseman of goods after arrival at destination, are stated in the opinion.

*Mr. Frank G. Tompkins,* with whom *Mr. Benjamin L. Abney* was on the brief, for plaintiff in error.

*Mr. J. Willard Ragsdale,* with whom *Mr. W. H. Townsend* and *Mr. J. William Thurmond* were on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This action was brought to recover for the loss of nine boxes of shoes which were destroyed by fire, on July 4,

1913, while in the possession of the Southern Railway Company, plaintiff in error. These boxes were part of a lot of thirteen boxes which had been shipped on June 21, 1913, at Petersburg, Virginia, by the Seaboard Air Line Railway and connections, consigned to W. E. Prescott, defendant in error, at Edgefield, South Carolina, and had arrived at Edgefield over the line of the Southern Railway Company on June 23, 1913. The plaintiff alleged three causes of action against the latter Company (1) as common carrier (2) as warehouseman and (3) for penalty because of failure to adjust and pay the claim, after notice, as provided by law. The answer of the Railway Company, with a general denial, set up that the shipment was interstate and governed by the Act to Regulate Commerce. At the close of the plaintiff's case, the Railway Company moved for a non-suit and decision was reserved. The Railway Company then put in evidence the tariff rules, filed with the Interstate Commerce Commission, which governed the shipment. These provided that the reduced rates specified would "apply on property shipped subject to the condition of carrier's bill of lading," and that otherwise there would be an increased charge, as stated. One of the stipulations of the bill of lading was that "property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival" might be kept in car, depot or warehouse, "subject to reasonable charge for storage and to carrier's responsibility as warehouseman only." The freight bill contained the provision: "Demurrage and storage will be assessed at the expiration of the free time provided by the rules of this Company."

The agent for the Railway Company (confirming what had been said by the plaintiff's witness) testified that after notice of the arrival of the goods, the consignee had paid the entire freight charges, that he (the company's agent) "had accepted the freight" and had the consignee's

"receipt for the goods." Four boxes were then taken away and the rest were permitted to remain to meet the consignee's convenience in removal. The agent further testified. "Q. What was the agreement with reference to holding those goods? A. He just wanted to know if it would be agreeable to leave them there, and I said it would be. Q. You did not make any charges for storing them? A. No, sir. Q. And did not expect him to pay any? No, sir." The consignee's representative had testified that, while nothing had been said on the point, he expected to pay storage.

At the close of the testimony, the plaintiff withdrew his causes of action against the defendant as common carrier and for the penalty, and the case went to the jury solely with respect to the liability of the defendant as warehouseman. The Railway Company moved for a direction of a verdict upon the ground that, under the Federal Act and the tariff regulations, the bill of lading defined the rights of the parties. The motion was denied. The trial court submitted to the jury the question of liability for the care of the goods as one arising under the state law which cast upon the defendant the burden of showing that it was not negligent. The position of the Railway Company, as shown by its requests for instructions which were denied, was that the shipment had not lost its interstate character; that the provisions of the bill of lading were controlling; that the defendant's liability as warehouseman was governed by Federal law; and that the burden was upon the plaintiff to show negligence as a basis for recovery.

Judgment upon a verdict in favor of the plaintiff was affirmed by the Supreme Court of the State. 99 So. Car. 422. With respect to the Federal question, the court said: "The defendant claims that inasmuch as this is an interstate shipment, the Federal statute governs. The question does not legitimately arise in this case for the reason

that the appellant moved for a non-suit on the ground that 'the evidence here shows that this freight arrived here on the 23rd of June and that the freight was paid and receipted for by the agent of Dr. Prescott; he came for it and paid the freight and I submit that where a common carrier delivered freight in good order, and has it in its depot and paid for then its liability as a common carrier ceases.' The court reserved its decision on that question and before it was announced, the plaintiff withdrew the cause of action as common carrier, and also the cause of action for the penalty. It, therefore, being conceded in the Circuit Court that the contract of carriage was ended and the appellant held the goods by a separate contract, the question as to appellant's liability as common carrier and the Federal statute under which it might have arisen is not before this court and the only question argued which we can consider is the question as to warehouse-man." The court then applied the rule of liability as defined by the state law. *Id.*, p. 424. And this writ of error has been prosecuted.

As the shipment was interstate, and the bill of lading was issued pursuant to the Federal Act, the question whether the contract thus set forth had been discharged was nec-essarily a Federal question. The reference, above quoted, to the concession in the trial court cannot be taken to mean that this Federal question was not raised, for, as we have seen, it was distinctly presented and pressed; but we assume that the ruling, in substance, was that there was no dispute as to the fact that the goods had arrived, that the consignee had paid the freight and signed a receipt for the goods, and that the nine boxes had remained in the possession of the carrier under the permission given, as testified, by the carrier's agent. The question is whether this admitted transaction had the legal effect of discharg-ing the contract governed by Federal law and of creating a new obligation governed by state law.

By the Act to Regulate Commerce (§ 1) the 'transportation' it regulates is defined as including "all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported." It is made the duty of the carrier "to provide . . . such transportation upon reasonable request therefor." All charges made for "any service" rendered in such transportation must be "just and reasonable." Section 6 requires that the carrier's schedules, printed as provided, "shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee." And it is further provided, in the same section, that no carrier shall "extend to any shipper or person any privileges or facilities in the transportation"—that is, as defined— "except such as are specified in such tariffs." The bill of lading in accordance with the published regulations provided that "every service" to be performed under it, including the service of the connecting or terminal carrier, should be subject to the conditions specified, and among these was the express condition governing the Company's responsibility as warehouseman for property not removed within forty-eight hours after notice of arrival. Such a retention of the goods was undoubtedly a terminal service forming a part of the 'transportation' in the sense of the Federal Act and governed by that Act. Thus, in the case of *C., C., C. & St. L. Railway Co.* v. *Dettlebach*, 239 U. S. 588, it was held, with respect to goods lost through the negligence of the terminal carrier while in possession as warehouseman under this stipulation, that the provision

of the bill of lading limiting liability to the declared value
of the goods was applicable.   The court deemed it to be
evident "that Congress recognized that the duty of car-
riers to the public included the performance of a variety
of services that, according to the theory of the common
law, were separable from the carrier's service as carrier,
and, in order to prevent overcharges and discriminations
from being made under the pretext of performing such
additional services, it enacted that so far as interstate
carriers by rail were concerned the entire body of such
services should be included together under the single term
'transportation' and subjected to the provisions of the
Act respecting reasonable rates and the like."   It is also
clear that with respect to the service governed by the
Federal statute the parties were not at liberty to alter
the terms of the service as fixed by the filed regulations.
This has repeatedly been held with respect to rates (*Tex.
& Pac. Rwy.* v. *Mugg*, 202 U. S. 242; *Kansas Southern
Rwy.* v. *Carl*, 227 U. S. 639, 652; *Boston & Maine R. R.* v.
*Hooker*, 233 U. S. 97, 112; *Louis. & Nash. R. R.* v. *Max-
well*, 237 U. S. 94), and the established principle applies
equally to any stipulation attempting to alter the provi-
sions as fixed by the published rules relating to any of the
services within the purview of the Act.   *Chicago & Alton
R. R.* v. *Kirby*, 225 U. S. 155, 166; *Atchison &c. Ry.* v.
*Robinson*, 233 U. S. 173, 181.   This is the plain purpose of
the statute in order to shut the door to all contrivances
in violation of its provisions against preferences and dis-
criminations.   No carrier may extend "any privileges or
facilities," save as these have been duly specified.   And as
the terminal services incident to an interstate shipment
are within the Federal Act, and the conditions of liability
while the goods are retained after notice of arrival are
stipulated in the bill of lading under the filed regulations,
the conditions thus fixed are controlling and the parties
cannot substitute therefor a special agreement.

In determining, in this view, whether the contract had been discharged, and the case removed from the operation of the Federal Act, regard must of course be had to the substance of the transaction. The question is not one of form, but of actuality. *Texas & N. O. R. R.* v. *Sabine Tram Co.*, 227 U. S. 111, 126; *Louisiana R. R. Comm.* v. *Tex. & Pac. Rwy.*, 229 U. S. 336, 341; *Illinois Central R. R.* v. *Louisiana R. R. Comm.*, 236 U. S. 157, 163; *Pennsylvania R. R.* v. *Clark Coal Co.*, 238 U. S. 456, 458. It is apparent that there had been no actual delivery of the nine boxes. The payment of the freight had no greater efficacy than if it had been made in advance of the transportation. The giving of a receipt for the goods by the consignee did not alter the fact that they were still held by the Railway Company awaiting actual delivery. The transaction at most could not be deemed to accomplish more than if the parties had agreed that until such delivery the goods should be held under a special contract—in lieu of the prescribed conditions, and this they could not effect without violating the Act which governed the shipment. It could not be said, for example, that while under the filed regulations the Railway Company was to make a "reasonable charge for storage" pending delivery that it could agree with a particular shipper, or consignee, to hold gratuitously; nor could it alter the terms of its responsibility while the goods remained undelivered. The actual service in holding the goods continued and we must look to the bill of lading to determine the legal obligation attaching to that service.

Viewing the contract set forth in the bill of lading as still in force, the measure of liability under it must also be regarded as a Federal question. As it has often been said, the statutory provisions manifest the intent of Congress that the obligation of the carrier with respect to the services within the purview of the statute shall be governed by uniform rule in the place of the diverse re-

quirements of state legislation and decisions. *Adams Exp. Company* v. *Croninger*, 226 U. S. 491, 506, 509, 510; *M., K. & T. Rwy.* v. *Harriman*, 227 U. S. 657, 672; *Boston & Maine R. R.* v. *Hooker*, *supra; M., K. & T. Rwy.* v. *Harris*, 234 U. S. 412, 420; *Charleston &c. R. R.* v. *Varnville Furniture Co.*, 237 U. S. 597, 603; *C., C., C. & St. L. Ry.* v. *Dettlebach*, *supra; N. Y., P. & N. R. R.* v. *Peninsula Exchange*, 240 U. S. 34. And the question as to the responsibility under the bill of lading is none the less a Federal one because it must be resolved by the application of general principles of the common law. *Adams Express Co.* v. *Croninger*, *supra; M., K. & T. Rwy. Co.* v. *Harriman*, *supra.* It was explicitly provided that in case the property was not removed within the specified time it should be kept subject to liability "as warehouseman only." The Railway Company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the warehouseman to deliver upon proper demand, his failure to do so, without excuse, has been regarded as making a *prima facie* case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff having the affirmative of the issue must go forward with the evidence. *Cau* v. *Tex. & Pac. Rwy.*, 194 U. S. 427, 432; *Transportation Company* v. *Downer*, 11 Wall. 129, 135; *DeGrau* v. *Wilson*, 17 Fed. Rep. 698, 700, 701, affirmed, 22 Fed. Rep. 560; *Clafin* v. *Meyer*, 75 N. Y. 260, 262, 263; *Whitworth* v. *Erie Ry.*, 87 N. Y. 413, 419, 420; *Draper* v. *D. & H. C. Co.*, 118 N. Y. 118, 122, 123; *St. L., I. M. & S. Ry.* v. *Bone*, 52 Arkansas, 26; *Lyman* v. *Southern Railway*, 132 No. Car. 721; *Lancaster Mills* v. *Merchants' Co.*, 89 Tennessee, 1; *National Line S. S. Co.* v. *Smart*, 107 Pa. St. 492; *Denton* v. *C., R. I. & P. R. R.*, 52 Iowa, 161;

*Cox* v. *Central Vermont R. R.*, 170 Massachusetts, 129; *Yazoo & Miss. Valley R. Co.* v. *Hughes*, 94 Mississippi, 242; 24 Am. Dec. 150–153, *note;* 22 L. R. A. (N. S.), *note* 975. In the present case, it is undisputed that the loss was due to fire which destroyed the Company's warehouse with its contents including the property in question. The fire occurred in the early morning when the depot and warehouse were closed. The cause of the fire did not appear, and there was nothing in the circumstances to indicate neglect on the part of the Railway Company. The trial court denied the motion for a direction of a verdict and charged the jury that "the burden of showing that there was no negligence is on the defendant." Applying the rule established by the state decisions (*Brunson* v. *Atlantic Coast Line R. R.*, 76 So. Car. 9; *Fleischman* v. *Southern Railway*, 76 So. Car. 237; see also *Wardlaw* v. *S. C. R. R.*, 11 Rich. 337), the Supreme Court of the State overruled the defendant's objection and sustained the judgment. 99 So. Car. 424. It has been recognized by the state court, as was said in the *Fleischman Case, supra*, that the rule it applies is a "somewhat exceptional rule" to which the court adheres "notwithstanding the great number of opposing authorities in other jurisdictions." 76 So. Car. 248.

For the reasons we have stated, we think that the obligation of the Railway Company was not governed by the state law and that, in this view, the exceptions of the plaintiff in error were well taken.

*Judgment reversed.*