Boston and Maine Railroad, Appellant, *v.* Standard Wall Paper Company, Respondent.

Third Department, March 11, 1920.

**Railroads — unlawful preference and rebate for transporting freight — agreement to transport freight free of charge over branch railroad maintained by manufacturer.**

Where a railroad corporation engaged in both interstate and intrastate commerce made an agreement with a manufacturing corporation, the defendant, that it would make no charge or extra charge for moving

freight to or from the station on its main line to the plant of the defendant which was connected with the main line by a private track maintained by the defendant at its own expense, the fulfillment of such agreement would in effect amount to the giving of a preference and rebate contrary to the Federal and State statutes, and the railroad is entitled to recover for services rendered in transporting the freight over said private line.

This is true although the contract aforesaid was made with the defendant's predecessor long before the State statute forbidding such discrimination was enacted.

Appeal by the plaintiff, Boston and Maine Railroad, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Washington on the 23d day of July, 1919, upon the decision of the court dismissing the complaint upon the merits after a trial without a jury.

*Visscher, Whalen & Austin* [*William L. Visscher* of counsel], for the appellant.

*Carmody & Kellogg* [*Willoughby L. Sawyer* of counsel], for the respondent.

H. T. Kellogg, J.:

This action was brought to recover railway charges, made in accordance with tariff rates duly published, posted and filed, for services in handling out-bound and in-bound freight in less than carload lots, and for transporting the same in ferry cars between the freight yards of the plaintiff and the mill yard of the defendant, both situate in the village of Schuylerville, N. Y. The ferry service was performed over a half mile track, laid upon a right of way of the defendant and maintained at its expense. In-coming freight for the defendant arriving at the Schuylerville yards in cars containing freight for other consignees was removed therefrom, assorted, and placed in a ferry car, which was thereupon transported by the plaintiff over the track of the defendant to its mill, there to be unloaded. Similarly less than carload freight was gathered up by the plaintiff at the mill of the defendant, placed in a ferry car, and transported to the station of the plaintiff, there to be loaded with other freight in other cars for outward transportation. Of the freight so handled and ferried, for which the charges are made, part was interstate and part was intrastate.

The charges for ferrying interstate freight were $395.45, and for intrastate $186. The complaint was dismissed by the court, which tried the case without a jury, on the ground that the predecessors in title of these parties in the year 1898, long before the services in question were performed, for a valuable consideration agreed among themselves that " no charge or extra charge shall be made by said railroad company for moving freight or freight cars loaded or empty to, from or between its main line in the village of Schuylerville and the plant of said Wall Paper Company." From a judgment entered upon the decision the plaintiff has appealed.

The parties seem to be agreed that destination for all in-coming freight of the defendant was the railway station at Schuylerville, and that for all-outgoing freight that station was the point of departure. The case, therefore, is not complicated by any question as to whether transportation for defendant to and from Schuylerville, for which regular rates were paid, comprehended the " spotting " of cars at the defendant's mill. Thus it was said upon the trial: " The Court: This whole thing is a charge for these ferry cars? Mr. Visscher: Yes, sir. The Court: That can't possibly be confused with spotting? You don't claim that it is? Mr. Kellogg: No, but I think they have more right to do it." Mr. Visscher represented the plaintiff and Mr. Kellogg the defendant. The court thereafter found that aside from the special contract " transportation of freight in less than carload lots to the defendant terminated by the delivery thereof at its station at Schuylerville, and its duty in regard to such out-going freight commenced at said point." In other words, the court found that there were two distinct transportations of all such freight, one a transportation to and from Schuylerville station from and to all outside points, performed by the plaintiff under its common-law duty as a public carrier, the other a transportation between the mill and the station, in regard to which the plaintiff had no duty except under a special contract with the defendant for the performance of a non-public service. Accordingly as to all interstate freight the court held that interstate transportation began and ended at Schuylerville station, and, therefore, since the journey to and from the mill was in all cases intrastate, none of the Federal prohibitions against preferences and rebates applied. In my

estimation the very premises agreed upon and found induce an opposite conclusion.

In *N. Y. C. & H. R. R. R. Co.* v. *General Electric Co.* (219 N. Y. 227) the facts were that the defendant in order to distribute in-coming freight to the various buildings of an extensive manufacturing plant, and in order to gather up its products, assort them, and make them ready for outward transportation, maintained elaborate freight yards, and operated six locomotives night and day. In-coming cars were placed by the plaintiff railroad upon storage tracks of the defendant to be handled therefrom for distribution by the locomotives of the defendant, while out-going cars were placed by these locomotives upon such tracks for shipment over the railway line of the plaintiff. The defendant sought to recover from the plaintiff an allowance for the services thus performed by it in the distribution of its cars, both by virtue of a special contract between the parties and independently thereof on the theory that the railroad duty of delivery was not completed by the plaintiff and was in part performed by the defendant. It was held that the defendant could have no recovery. Cardozo, J., writing for the court, among other things, said: " But no allowance is due for service rendered by the consignee after delivery has been made and transportation is at an end. An allowance in such circumstances would constitute an unlawful rebate. That is true of interstate shipments under the laws of Congress (Act to Regulate Commerce [Feb. 4, 1887], 24 Stat. L. 379, §§ 2, 3, 17; Act of Feb. 19, 1903, 32 Stat. L. 847; Act of June 29, 1906, 34 Stat. L. 584)." Again, the court said: " The law has attempted ' to shut the door to all contrivances in violation of its provisions against preferences and discriminations.' (*Southern Ry. Co.* v. *Prescott*, 240 U. S. 632, 638.) The door to all those abuses would be opened if a railroad could be made without extra charge to participate at its own expense in the internal management of the business of shippers and consignees." In that case, as in this, interstate transportation had ceased before the services of plant switching, for which an allowance was sought, had been performed, so that charges for intrastate car movements alone were immediately involved, yet it was held that interstate commerce was affected thereby. Clearly, if the plaintiff there could not legally pay the defendant

for the cost of such services because of the commerce acts, then the gratuitous performance of similar services by the plaintiff here equally would constitute an unlawful preference and rebate under such acts. Indeed, no other conclusion can in reason follow. If interstate packages arriving at Schuylerville are there handled, assorted, reshipped and ferried to the mill of the defendant, for all of which the defendant pays only the rate to Schuylerville, then clearly the defendant has received more value than other shippers for the same rate, or in effect has paid less for interstate transportation than regular rates, for ferrying involves cost, and to determine the rate paid for the main transportation that cost must first be deducted. Therefore, it seems clear to me that notwithstanding the contract between the parties the plaintiff is entitled to recover its charges for the ferrying of all interstate freight. It also seems clear to me that the trial court was mistaken in holding that because of the contract between the parties there could be no recovery of charges for ferrying intrastate freight. This conclusion was based upon the fact that the Public Service Commissions Law of the State, which clearly forbids such discriminations as free ferrying, was enacted long after the contract was made. (See Laws of 1907, chap. 429, §§ 31-33; Consol. Laws, chap. 48 [Laws of 1910, chap. 480], §§ 31-33.) A similar argument was made in *N. Y. C. & H. R. R. R. Co.* v. *General Electric Co.* (*supra*), but it was there held that notwithstanding a precedent contract sanctioning a discriminatory practice, the Public Service Commissions Law operated to make the practice illegal as to all intrastate freight.

The judgment should be reversed and judgment directed for the plaintiff for $581.45, with interest and costs.

All concur.

Judgment reversed, with costs, and judgment directed for the plaintiff for $581.45, with interest and costs.