Davis, Director General of Railroads, Appellant, vs. Williams Creamery Company, Respondent.

*February 11—March 10, 1925.*

*Carriers: Demurrage: Heavy machinery unloaded on railroad premises.*

Heavy machinery unloaded from cars and left by the consignee on railroad premises about thirty feet from a parcel of land leased by the consignee from the railroad company, where it was to be permanently installed, and for which the consignee had given the railroad company a receipt and paid the freight charges, is not "freight received for delivery or held to complete shipment, or for forwarding directions," on which the railroad company could recover demurrage under existing tariff rules.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Bundy, Beach & Holland* of Eau Claire and *R. L. Kennedy* and *G. F. Dames,* both of St. Paul, and oral argument by *Mr. Dames.*

For the respondent there was a brief by *E. M. Bradford* of Augusta and *Linderman, Ramsdell & King* of Eau Claire, and oral argument by *G. O. Linderman.*

OWEN, J. This action was brought to recover storage charges claimed to be due the appellant on a shipment of machinery to the respondent. At the time in question respondent owned a parcel of land on which a condensary was being erected at Osseo, Wisconsin, and in addition held a lease from the appellant railroad company of a parcel of land 600 feet in length and 70 feet in width off the northerly side of the railway company's depot grounds and immediately adjoining the condensary property on the south.

About June 1, 1919, two carloads of freight for the respondent arrived at Osseo. This freight consisted of heavy machinery, weighing in the aggregate some 73,000 pounds, for installation in its condensary plant. The respondent promptly paid the freight charges, receipted to the appellant for the freight, and unloaded it from the cars. The freight thus unloaded was not removed from the railway premises, but was left thereon at a point ten feet from the sidetrack, about 300 feet from the depot, and about thirty or forty feet from the premises which respondent held under lease from the railroad company. The machinery was left at this place until June 16th.

The appellant bases its right to recover upon certain rules which it had promulgated and filed as a part of its tariff charges with the interstate commerce commission. The pertinent parts of said rules are as follows:

"Storage rule 1. Freight, except company material, received for delivery or held to complete a shipment or for

forwarding directions, if stored in or on railroad premises, is subject to these rules.

"Section b. Other carload freight held in cars for delivery and subsequently unloaded in or on railroad premises is subject to demurrage rules while in cars and to these storage rules after it is unloaded."

"Section d. Freight upon which the free time allowed under demurrage rules has expired while in cars and subsequently unloaded in or on railroad premises, is subject to these storage rules when unloaded, without free time allowance."

Since there is no controversy as to the applicable rate if appellant is entitled to the charge provided for by the rules, it is deemed unnecessary to make further reference thereto. Similar rules were established by the director general of railroads on lines under federal control during the war and were adopted for the purpose of promoting the removal of freight from railroad premises, thus preventing the congestion of storage which interfered with the efficient operation and movement of freight. Rules of this class have been uniformly sanctioned by the interstate commerce commission. *Dakota M. Co. v. Director General,* 59 Interstate Comm. Comm. Rep. 101.

Storage rule 1 above quoted is in the nature of a preamble to the other rules relied upon and fixes their scope, as there is nothing in the subsequent rules repugnant to the general language of storage rule 1 which refers to freight "received for delivery and held to complete a shipment or for forwarding directions." If the rules upon which the appellant relies for a recovery are applicable to the situation, it must appear that the machinery when unloaded from the cars constituted freight "received for delivery or held to complete a shipment or for forwarding directions." Manifestly it was not held "to complete a shipment or for forwarding directions." If paying the freight charges, receipting for the goods, and unloading the same from the cars by the respondent constituted a delivery of the goods to the respondent, then it certainly no longer constituted freight received

for delivery. Delivery had already been made, and the dominion of the railroad company over, and its responsibility for the safe-keeping of, the same was terminated by such delivery.

The trial court held that the machinery was not left on the railroad company's premises pursuant to any understanding or agreement between the parties, and during the time it remained on said land no contractual relation existed between appellant and respondent either as shipper and carrier, bailor and bailee, storer and warehouseman, or otherwise, and that during said time the appellant owed to the defendant no duty in reference to said property. This is tantamount to a finding that there was a complete delivery of the freight to the respondent. It is not always an easy matter to determine whether there has been a delivery of freight to the consignee. This does not always depend upon the mere payment of the freight charge, or the unloading of the freight from the cars, or upon the signing of a receipt by the consignee. As said in *Southern R. Co. v. Prescott,* 240 U. S. 632, 36 Sup. Ct. 469: "Regard must of course be had to the substance of the transaction. The question is not one of form but of actuality." What will amount to a delivery depends somewhat upon the nature of the subject of the delivery and the circumstances of the case. What would constitute delivery of heavy chattels would not necessarily suffice in cases of lighter articles that may conveniently be passed from hand to hand. The intention of the parties is always a material consideration. Here the subject of delivery consisted of heavy machinery. It could not be easily moved. While it was left on the railroad premises, it was within thirty or forty feet of the place where it was to be permanently installed. It was left there by the consignee, of its own volition, in the absence of any agreement with the railroad company.

There is no contention that the railroad company owed any duty of safeguarding the machinery or that it would have been in any manner responsible in case of its destruc-

tion.   Its dominion over and its responsibility for the safe-keeping of the property had been completely terminated. The situation is the same as though the respondent had placed building material and equipment upon the right of way of the railroad company awaiting its installation into the building it was constructing upon or adjacent to the right of way.   We hold that there was a complete delivery of the freight and that the rules relied upon have no application to the situation.   To apply them to the circumstances here presented would be to say that the rules operate to prescribe penalties for trespasses upon railroad property.

*By the Court.*—Judgment affirmed.