## LAKE UNION DRY DOCK & MACHINE WORKS v. UNITED STATES.*
### No. 7569.

Circuit Court of Appeals, Ninth Circuit.
Nov. 4, 1935.

Raymond G. Wright, H. B. Jones, Robert E. Bronson, and Story Birdseye, all of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., and John Ambler, Asst. U. S. Atty., both of Seattle, Wash., and Owen P. Hughes, Asst. U. S. Atty., of Tacoma, Wash.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, owner of a ship repair yard and free floating dry dock in Lake Union, Wash., appeals from the decision of the District Court holding that pursuant to a contract for repairing appellee's vessel, the Guard, the vessel became a bailment to the appellant, and that damage to the vessel by fire was attributable to appellant's failure to fulfill the obligation of due care arising from the bailment; hence judgment against appellant.

In accordance with the contract the Guard was brought to appellant's yard and there placed on blocks on defendant's floating dry dock and the dock raised until the keel of the vessel was some six or eight feet above the water line. The dock was square-ended, 32 feet wide and 70 feet long, and floated like a lighter free upon the water, and could be moved from place to place while the appellant used it to hold the Guard in the air. It was moored to a wharf in appellant's ship repairing plant by mooring hausers. On the sides of the dry dock were cleats to which the hausers were belaid. From the exhibits in evidence it is apparent that one man should be able to cast off the hausers in about three minutes' time, after which, if the wind was favorable, the dock would float away from the wharf to which it was moored. The testimony shows that on the night of the fire in question the wind was blowing across the wharf towards the barge and the hull and housing of the Guard, which stood high above the adjoining premises. When the moorings were finally cast off, after the vessel was burn-

ing, the dry dock and Guard were in fact carried by the wind away from the wharf.

A fire broke out in the buildings on the adjacent property, the flames of which did not reach the dry dock or damage the vessel for fifteen or twenty minutes after the presence of the fire was known to appellant's servant, the night watchman. During that period this single watchman in charge of the repair yard and the dry dock called the Seattle fire department, and then devoted himself to an attempt to extinguish the fire in the buildings. Had he acted to save the ship, or had there been other employees of appellant available for that purpose, the moorings of the dry dock could have been quickly cast off and the dock and vessel would have floated to safety out of range of the fire. In such manner as this the Guard was later saved from complete destruction when two seamen, living aboard her, eventually cast off the dock and extinguished the flames which reached the vessel in the intervening twenty minutes. The resulting damage was $3,362, for which sum judgment was had in the District Court.

The above outline of facts concords with the findings of the trial judge and is supported by the evidence. In addition to charging the defendant with negligent breach of duty arising from the bailment, the United States, in its complaint, included a count for breach of an express provision in the contract by which the dry dock company agreed to furnish the vessel "ample fire protection" during the time in dry dock.

The District Judge found that the plaintiff and defendant occupied the relation of bailor and bailee, and that the defendant failed to meet the obligations of due care imposed upon it by the relationship and by the terms of the express contract. The court thus treated the contract provision as declaratory of the duty which would in any event arise from the bailment.

We agree with the District Judge that, since, necessary to the repairs, the appellant controlled through its floating dry dock the entire mobility of the vessel, it was a bailee of and responsible for reasonable care of the Guard in so far as damage to her was conditioned upon her proximity to and mobility in relation to premises of the appellant whence the dam-

aging element originated. The burden of showing due care rested upon the bailee. Pan-American Petroleum Transp. Co. v. Robins Dry Dock & Repair Co., (C. C. A. 2) 281 F. 97, 107, 108, certiorari denied 259 U. S. 586, 42 S. Ct. 589, 66 L. Ed. 1076; International Mercantile Marine S. S. Co. v. Fletcher Co., (C. C. A. 2) 296 F. 855, 857, certiorari denied 264 U. S. 597, 44 S. Ct. 454, 68 L. Ed. 868; Newport News Shipbuilding & Dry Dock Co. v. United States (C. C. A. 4) 34 F.(2d) 100, 105, certiorari denied 280 U. S. 599, 50 S. Ct. 69, 74 L. Ed. 645; Thompson v. Chance Marine Construction Co. (C. C. A. 4) 45 F.(2d) 584, 585; McDonald v. Perkins & Co., 133 Wash. 622, 234 P. 456, 458, 40 A. L. R. 859.

Appellant urges that the rule does not apply when the damage to the bailed article is the result of fire, and cites a number of cases, chiefly Southern R. Co. v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836, in support of the contention. In that case goods in the possession of a warehouseman were destroyed by fire. The circumstances of the fire are not set out in the opinion. The plaintiff relied upon the presumption of negligence arising from loss of the goods while in the bailee's possession. The court said of this contention (240 U. S. 632, at page 640, 36 S. Ct. 469, 473, 60 L. Ed. 836): "The railway company was * * * liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the warehouseman to deliver upon proper demand, his failure to do so, without excuse, has been regarded as making a prima facie case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference -of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff, having the affirmative of the issue, must go forward with the evidence."

There is nothing in the decision cited which applies in the instant case to relieve appellant from its necessity of showing the exercise of due care on its part. The warehouse may take fire from causes in no way connected with the building or with the purposes for which it is used. Here the fire originated in a boiler room on appellant's wharf, and the testimony indicates that previous fires on the wharf were

804

not of exceptionally rare occurrence. Appellee does not charge, and we do not intimate, that appellant's negligence was responsible for the origin of the blaze. We do hold, however, that, in this state of affairs, damage to the Guard from a fire originating on the premises of the bailee may in justice be attributed to the fault of the bailee, in the absence of a preponderance of exonerating evidence on its part. This is not a case of "absence of circumstances permitting the inference of lack of reasonable precautions."

The District Court does not explicitly rest its finding of negligence upon the failure of appellant to overcome the presumption arising from the bailment. It may be that the court reached its conclusion without the aid of the presumption. If so, the finding is amply supported by the evidence.

Two of the appellee's sailors remained on board the Guard during the time in dry dock, and appellant claims that it was their duty to cast off the hausers immediately upon discovery of the fire, thus minimizing or avoiding the ensuing damage. It appears that the dinghy belonging to the Guard was housed in one of the buildings adjacent to the fire, and that these two men, rather than immediately freeing the dry dock and allowing it to float away from danger, chose to save the dinghy after a preliminary fruitless attempt to extinguish the fire in the buildings. In view of our agreement with the District Court's finding of a bailment to the appellant, it is our opinion that the primary obligation of the bailee to take reasonable steps to prevent an injury arising from a fire adjacent to the helpless Guard cannot be shifted to the bailor's agents who chose to assist the one agent of the bailee in the method by which the latter was attempting to extinguish the fire on the wharf. Appellant does not claim that the sailors were not responsible for the dinghy or that it was a bailment to the appellant. In such a situation the sailors may well have chosen to save the dinghy for which they were solely responsible rather than the Guard, over which appellant, as bailee, had a primary duty of protection. We are in accord with the finding that the seamen acted with reasonable care and diligence under the circumstances, and have not made their principal responsible on any theory of obligation to minimize the damage.

Affirmed.