CAROLLO *v.* RAILWAY EXPRESS AGENCY, INC.

(Decided December 9, 1935.)

*Messrs. Fritsche & Winchester*, for plaintiff in error.

*Messrs. Fraser, Effler, Shumaker & Winn*, for defendant in error.

CARPENTER, J. Plaintiff in error, Peter Carollo, was plaintiff in the trial court and will be referred to herein as plaintiff. The defendant was Railway Express Agency, Inc., and will be called the company.

In his petition plaintiff alleged that in May, 1932, American Fruit Growers, Inc., shipped via the company a carload of strawberries from Marion, Mississippi, consigned to American Fruit Growers, Inc., or Swigart Sales Company, Toledo, Ohio. En route, the strawberries were purchased by plaintiff.

May 6, 1932, the company notified plaintiff of the arrival of the strawberries on its steam track at Toledo. The berries were found to be in defective condition and plaintiff refused to pay the express charges, $420.65, and refused to accept the berries. Thereupon the company's agent at Toledo and plaintiff verbally agreed that if plaintiff would accept the berries, pay the charges, dispose of them for the best price obtainable, and then file with defendant his claim for his loss, defendant would pay same. Plaintiff did this and sold the berries, realizing $812. He further alleged they were worth $1330, and that his loss was $518, for which he asked judgment.

A general demurrer to the petition was filed by the company, and was sustained by the trial court. Plaintiff not wishing to plead further, final judgment was entered against him. He now prosecutes error to this court.

From the petition it appears that the shipment in question was an interstate one, hence governed by the Federal Interstate Commerce Act. Title 49, Section 1, *et seq.*, U. S. Code. The contract of carriage must of necessity have been a bill of lading, under Title 49, Sections 20 (11), and 81 to 124, inclusive, U. S. Code. The parties to any such bill of lading are the consignor, the carrier, and the consignee. In this case by his purchase of the berries the plaintiff became the

consignee and owner of them, and thereby his relationship to the carrier and the berries was defined by the bill of lading and the federal law. *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S., 639, 57 L. Ed., 683, 33 S. Ct., 391; *Toledo & Ohio Central Ry. Co.* v. *S. J. Kibler & Brother Co.,* 97 Ohio St., 262, 119 N. E., 733. Under that law the liability of the carrier is fixed in the Cummins Amendment to the Interstate Commerce Act, Title 49, Section 20 (11), U. S. Code, where it says the carrier "shall be liable to the lawful holder thereof [the bill of lading] for any loss, damage, or injury to such property, caused by it," the carrier.

By a special contract with even the "designated agent" of the company, such as plaintiff has alleged in his petition, he could not change his relationship to the company, nor could it or any one for it, even its president and board of directors, increase or decrease its liability arising from its handling that car of strawberries. An attempt to do so would violate that act, and be void. Title 49, Section 2, U. S. Code.

We cannot tell from the petition whether the damaged condition of the berries was "caused by" the company, and, unless it was, no liability could be imposed upon it. The only remedy available to plaintiff was an action based upon the bill of lading against the company for "any loss, damage, or injury [if any] to such property caused by it." /

By means of a special contract, such as is claimed by plaintiff, a carrier and a shipper could in every case change the relationship between themselves and increase or decrease the liability of the carrier, and thereby evade the whole scheme of uniformity of rates and dealings which has been set up and insisted upon under the Interstate Commerce Act since its first enactment in 1887.

The Supreme Court of the United States in a long line of decisions has enforced that scheme of uniform-

ity, one of the earlier decisions being that of *Adams Express Co.* v. *Croninger,* 226 U. S., 491, 57 L. Ed., 314, 33 S. Ct., 148, 44 L. R. A. (N. S.), 257. The extent to which that court enforces such uniformity is illustrated in *Southern Ry. Co.* v. *Prescott,* 240 U. S., 632, 60 L. Ed., 836, 36 S. Ct., 469. In that case goods had been accepted by the consignee, and the charges paid, but with the consent of the local agent part of the goods had been left in the carrier's warehouse and were destroyed by fire. The state courts treated the contract of carriage as completed, and applied the state law governing the liability of warehousemen, but the Supreme Court held that the bill of lading contract still controlled and that the contract between the owner and the carrier's agent was void. Concerning it, Mr. Justice Hughes said:

"It is also clear that with respect to the service governed by the Federal statute the parties were not at liberty to alter the terms of the service as fixed by the filed regulations."

Another case by that court very similar to the one at bar, except that the interstate shipment was flour instead of strawberries, was *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.,* 241 U. S., 190, 60 L. Ed., 948, 36 S. Ct., 541. A special contract with the owner with respect to the disposition of the damaged property was alleged. Mr. Justice Hughes, again speaking for the court, said on page 197 of the opinion:

"But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the

plain policy of the Act and open the door to the very abuses at which the Act was aimed.''

The action of the trial court in sustaining the demurrer was right and its judgment is affirmed.

*Judgment affirmed.*

LLOYD and OVERMYER, JJ., concur.