A. POLK & SON *v.* NEW ORLEANS & N. E. R. CO.

(Division A.   Jan. 9, 1939.   Suggestion of Error Overruled Feb. 6, 1939.)

[185 So. 554.   No. 33494.]

Travis & Travis, of Hattiesburg, for appellant.

**Heidelberg & Roberts,** of Hattiesburg, for appellee.

Argued orally by **S. E. Travis**, and **Cecil Travis**, for appellant, and by **M. M. Roberts**, for appellee.

**McGowen, J.**, delivered the opinion of the Court.

Polk & Son, appellants, brought their action on a contract (bill of lading) for failure of appellee to deliver one brown mule, tag number 8077, and for overcharges in freight.

The mule was alleged to have been shipped from Fort Worth, Texas, to Polk & Son, at Hattiesburg, Mississippi. The appellee, Railroad Company, was the delivering carrier. The shipment of livestock, of which the mule was a part, was delivered to the Texas and Pacific Railroad, the initial carrier.

The defendant plead general issue and gave a notice under the general issue that would prove the mule died by the act of God, in that it died with pneumonia, without negligence on its part.

On hearing the evidence the county court judge, without the intervention of a jury, denied appellants a recovery and rendered judgment in favor of appellee, the railroad company. On appeal the circuit court affirmed this judgment.

The evidence for the appellants in the court below showed by the bill of lading that a shipment of livestock was delivered to the initial carrier at 7:15 P. M. May 7, 1935, "in apparent good order," to be delivered to Polk & Son, at Hattiesburg, Mississippi. In the ship-

ment there were twenty-three mules and one horse. Number 8077 was described in the invoice rendered by the consignor as "one brown mule." The mule was not delivered at Hattiesburg. Appellants also proved by their purchasing agent that the particular mule in question was examined within two or three hours before the mules were delivered to the carrier, and that the particular mule in question was sound and in good order, being tagged by him in the tail as number 8077. The bill of lading, the invoices, and the freight bill paid by the appellant, were all introduced in evidence. The freight bill shows that on May 8, 1935, the mules were unloaded and fed at 5:30 A. M., and were reloaded at 1:30 P. M., and charge was made for feeding the mules. The carload of mules was shown to have been received at Hattiesburg on the morning of the ninth.

By way of defense the railroad company offered a veterinarian, who testified that between 9 and 10 A. M., May 10, 1935, he was called on to examine a mule, with tag number 8077 affixed to its tail, dead on the platform of the railroad. He testified that this mule bore no marks, abrasions, scars, or wounds, either externally or internally. He made a post mortem examination of the mule thoroughly and found that the mule had pus in the lungs, and that the mule had died from pneumonia, not traumatic or mechanical, that the mule had been dead about ten hours when he examined it, and that, in his opinion, it died from influenza or from a cold, and that it would have required thirty or forty hours from inception to death from that disease. He did not see the mule removed from the car, nor did he know anything about the time the mule he examined was unloaded, if unloaded at all, except from an examination of the railroad files, where he found that this mule had been removed from the particular car in which the entire shipment was made. In rebuttal the appellants showed by a practical veterinarian, who was the buyer at Fort Worth, that the particular mule was examined by him at Fort Worth shortly

before its delivery to the railroad, and at that time it had no external symptoms of disease, of fever, of heavy breathing, or of any symptom of pneumonia. He ascertained this by feeling of the mule's mouth with his hand. He had studied as a veterinarian, but was not a licensed veterinarian, but had had twenty-five years experience in handling mules and as a practical veterinarian.

There was evidence on the question of extra charges and overcharges, which we shall not detail here for the reason that the finding of the county court judge, in our judgment if the evidence was conflicting, cannot be said by us to be manifestly wrong or against the overwhelming weight of the evidence.

There are many assignments of error, all of which can be reduced to one—that is that the appellants were entitled to a judgment and that the judgment in favor of the appellee was erroneous under the facts detailed.

1. It will be observed at once that this was an interstate shipment of livestock, and the question of liability or not of the carrier and burden of proof is to be settled by the rule in the federal courts as the Carmack Amendment (1906), making the initial carrier liable and fixing the rule with reference thereto, supersedes the rules, not in accord therewith, adopted by the several states theretofore. See 34 U. S. Stat. 595. By a subsequent amendment thereto the delivering carrier was also made liable in the same manner as the initial carrier. See 44 U. S. Stat. 1448 as amended in 46 U. S. Stat. 251, 49 U. S. C. A., section 20 (11, 12).

The uniform livestock bill of lading, upon which this suit is based, contains the following exceptions: "Sec. 1. (a) Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any of the livestock herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensity of the animal, or the act or default of

the shipper or owner, or the agent of either, or by riots, etc.''

The appellant proved a delivery of the mule in apparent good order to the initial carrier and nondelivery thereof by the carrier at destination. Thereby he made out a prima facie case whether the action was in tort or on the contract. See 1 Roberts Federal Liabilities of Carrier (2 Ed.), sec. 384.

The carrier then availed itself of its right to the exception that the animal died from pneumonia of a type not produced by rough handling, which was due to the ''inherent vice, weakness, or natural propensity of the animal.'' This exception in the contract is recognized by common law.

When the detailed condition of the mule was put in evidence by the carrier, was it further incumbent upon the carrier to trace the journey of the animal from Fort Worth to Meridian and exclude negligence of any kind on its part? If the described condition of the mule raised an inference of negligence, then the carrier had not brought itself within the exception, but if on the contrary the circumstances, the state of the dead body and signs thereon, raised the fair inference of no negligence, the carrier had established its defense.

The court below evidently reached the conclusion that when the carrier showed that the mule had died from pneumonia, not traumatic or mechanical, and without wounds or bruises either external or internal, that it brought itself within the exception—the inherent vice, weakness, or propensity of the animal, and under the federal rule as to the burden of proof it devolved upon the appellants to go forward with their proof and show some negligence on the part of the carrier proximately causing or contributing to the death of the animal from pneumonia. See Southern Railway Company v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836, wherein Judge HUGHES also held that the same rule would apply

to the railroad, as to the exception there pleaded, as would apply to a warehouseman.

It only remains for us to say whether or not the evidence offered by the veterinarian as a witness for the carrier that this mule had no wounds or abrasions, either internally or externally, and that it died from pneumonia, not traumatic or mechanical, coupled with the fact that the livestock shipped in the same car were delivered without any showing of any wounds or abrasions or pneumonia, and overcome the prima facie case made by the appellants. In the case of Hussey v. Saragossa, 12 Fed. Cas. 1066, No. 6,949, the court there propounded this inquiry: "Is an injury shown when the article shipped is a horse or other livestock, which is proved to have been delivered to the carrier in good health and condition, and to have been re-delivered to the shipper in a sick and debilitated condition, but without any fractures, wounds, abrasions, or other external or visible injury? I think not. As well might a passenger who embarks in good health claim to support an action for damages against the common carrier, by simply showing that when he disembarked at the end of his voyage he was in a sick and debilitated condition.

"The liability of a common carrier of animals is not in all respects the same as that of a carrier of inanimate property. For instance, he is not an insurer against injuries arising from the nature and propensities of the animals and which diligent care could not prevent. He is not liable for injuries by disease contracted without his fault after the stock is delivered to him." This case has been often cited with approval by other courts.

In the case of St. Louis & S. F. R. Co. v. Brosius & Le Compte, 47 Tex. Civ. App. 647, 105 S. W. 1131, the court there had a case where the livestock died from pneumonia, and held that the burden did not rest upon the carrier to show the origin of the disease and said further: "We know of no established rule by which to determine with exactness in every case what in-

juries furnish, from their mere presence, prima facie evidence of negligence, and those that do not. But we feel sure that the mere fact that an animal apparently sound when delivered for shipment arrives at its destination sick with a disorder, such as pneumonia, should not raise the presumption that the carrier had been guilty of negligence which caused it. [Citing many cases.]

"Pneumonia is a well-known and malignant disease, attacking both man and beast at times when least expected, and frequently under conditions which shroud its cause and beginning in mystery. Medical science has not yet reached that stage when it can, with any degree of certainty, predict or prevent its development in animated beings."

So far as we have been able to ascertain the case here presented for the carrier is the stronger. The animal here involved had upon it no sign of any external or internal scar, bruise, or abrasion. None is shown as to the twenty-three other animals which accompanied this one in this shipment so that we think that even if it be said there was a conflict in the evidence that the evidence of the veterinarian, who made the post-mortem examination, together with the other facts we have detailed, warranted the trial court in finding no liability in this case against the carrier. Before the adoption of the Carmack Amendment in 1906, the rule had been different in Mississippi from that enforced by the federal court; subsequently from that which had been adopted prior and subsequent thereto. In the case of Chicago, St. Louis and New Orleans Railroad Company v. Geo. D. Abels, 60 Miss. 1017, this Court held that: "In an action by the owner for damages to property shipped the burden of proof is upon the common carrier to prove the existence of a special contract of shipment, if there be one, and to prove that the injury complained of resulted without his fault, from some cause excepted by the contract." Likewise, see Louisville, N. O. & T. Ry. Co. v. Bigger, 66

Miss. 319, 6 So. 234, where the Court held that the exception relied on in this case was an exception recognized as to common carriers by the common law.

We, of course, do not hold that the disease, pneumonia, is an act of God, or vis major (as we prefer to say) under the well recognized definition thereof by the courts.

The trial court had sufficient evidence before it to find that the mule not delivered was identified by the carrier.

Affirmed.