WOODBURN BROTHERS, a Partnership, individually, and to the use of C. E. Smith, and Johnson-Spencer, a Partnership; and G. B. Armstrong, Jr., Appellants,

v.

Andrew A. ERICKSON and Laramie Stock Yards Company, a Wyoming corporation, Appellees.

No. 5221.

United States Court of Appeals Tenth Circuit.

Feb. 4, 1956.

1. 46 U.S.C.A. §§ 596, 600, 641, 642.

Alfred M. Pence, Laramie, Wyo., for appellants.

G. R. McConnell, Laramie, Wyo. (Walter Scott, Laramie, Wyo., on the brief), for appellees.

Before BRATTON, Chief Judge, and PICKETT, Circuit Judge, and MELLOTT, District Judge.

PICKETT, Circuit Judge.

On May 10, 1954, the parties to this action entered into written contracts whereby the defendants agreed to pasture cattle for the plaintiffs during the summer of 1954. Pursuant to the contracts, seven hundred and twenty-four head of yearling cattle were delivered to the defendants. The plaintiffs brought this action to recover damages caused by alleged breach of the contracts in pasturing the cattle. Defendants counterclaimed for the amount due for pasturage and expenditures for veterinary services.

The case was tried to the court without a jury. The defendants were denied any recovery on their counterclaim, and judgment was entered for individual plaintiffs, totaling $5,728. Plaintiffs do not question the court's findings, but appeal upon the sole ground that an improper measure of damages was applied to the findings.

The contracts stipulated that the cattle were to be delivered to the defendants on May 10, 1954, free from all disease, and that the defendants were to use due diligence in the proper care of the cattle, reporting all deaths, with a report from the State Veterinarian as to the cause thereof. In consideration of the pasturage, the defendants were to be paid four cents per pound if the gain was two hundred pounds per head or under; five cents per pound if the gain was over two hundred and not more than two hundred-fifty pounds per head; and six cents per pound if the gain was over two hundred-fifty pounds per head.

Unexpected drought conditions apparently caused a feed shortage. The complaint alleged that after the delivery of the cattle, the defendants verbally agreed to dispose of their own cattle; to refrain from cutting hay on the meadows; and to make all feed on defendants' ranch available to plaintiffs' cattle. It was further alleged that the defendants breached the contracts by pasturing their own cattle on the ranch; by cutting hay on the meadows; by permitting bulls to intermingle with heifers; and in failing to care for the cattle in a husbandlike manner by providing adequate care and feed for them. Plaintiffs alleged that with proper care and feeding, the cattle should have gained a minimum of two hundred pounds each.

There is no dispute as to the number of cattle delivered to the defendants on

May 10, 1954, or the number and weight of those redelivered to the plaintiffs. The court found that the defendants breached the terms of the contracts by cutting hay on the meadows and using alfalfa pasturage which should have been devoted to the maintenance of plaintiffs' cattle; by failing to provide sufficient watering places during the dry season; by failing to report the death loss of cattle as provided in the contracts; and by overstocking their lands. The court made no finding as to the gain which the cattle would have made except for the breach of the contracts. A finding relating to the gain stated "That the parties contemplated, at the time of contracting, that the cattle would gain 200 pounds each in weight during the pasturage period covered by the contract." Relying upon this contemplated gain of two hundred pounds per animal, the court allowed the plaintiffs damages at the rate of four cents per pound, which was not the market price, without giving any consideration to the amount of the actual gain. It is true that the parties contemplated that the cattle would gain two hundred pounds each; they also contemplated a gain of two hundred-fifty pounds each and more than two hundred-fifty pounds each, but there was no guarantee that there would be any gain.

The record here contains only the pleadings, the court's memorandum, findings of fact and conclusions of law, together with the judgment. While some of the breaches found by the court were not within the requirements of the provisions of the written contracts but in the alleged verbal contract, the defendants have not appealed and the correctness of these findings and conclusions is not before us. In this posture of the case, the sole question presented is the sufficiency of the damages awarded.

■ Generally one injured by a breach of contract is entitled to be compensated for the injury sustained and to be placed in the same position in which he would have been had the contract been performed, less proper deductions. 15 Am. Jur., Damages, Sec. 43; L. Albert & Son v. Armstrong Rubber Co., 2 Cir., 178 F.2d 182, 17 A.L.R.2d 1289; Baer Bros. Land & Cattle Co. v. Palmer, 10 Cir., 158 F.2d 278, 280.

In the Baer case, the plaintiff sought to recover damages resulting from the loss of gain in cattle due to a breach of contract to pasture cattle. In speaking of the measure of damages, the court said:

> "Gains which have been prevented as a consequence of the breach are within the rule when they are a natural result of any breach, or such as might have been in contemplation of the parties when entering into the contract." (Footnote omitted.)

■ Applying this rule, the plaintiffs' loss was the value of the difference between the actual gain of the cattle and that which the evidence shows the cattle would have gained had there been no breach, less proper deductions. The damage would be the value of this difference at the market price of cattle in the condition in which they would have been except for the breach, less the cost of pasturage.[1]

It is quite obvious that the trial court assumed that the parties agreed that there would be a minimum average gain of two hundred pounds per head. The contracts do not so provide. The provisions relating to the gain were only for the purpose of determining the compensation to be paid to the defendants for pasturing the cattle and was in no sense a guaranty of a specific gain.

■■ The court found that the defendants failed to account for ten head of cattle. It concluded that the defendants had the burden of proving that those cattle disappeared through no fault of

---

1. For example, assuming the cattle gained an average of fifty pounds per head and the court found from the evidence that they would have gained one hundred twenty-five pounds except for the defendants' breach of the contract. The plain-

tiffs' loss would be the market value of seventy-five pounds per head, less the pasturage cost of four cents per pound on one hundred twenty-five pounds per head.

the defendants, and that the defendants failed to sustain this burden with respect to the ten head of cattle. These were bailment contracts for the mutual benefit of the parties. In such cases there is an absolute obligation on the part of the bailee to return property to a bailor or to account for it. Since the defendants failed to account for ten head of cattle as required by the contract, the plaintiffs are entitled to judgment for the market value thereof. 6 Am.Jur. (Rev.Ed.) Bailments, Secs. 208, 221; 8 C.J.S., Bailments, § 50(b); Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 161, 86 L.Ed. 89;[2] cf. Fuchs v. Goe, 62 Wyo. 134, 163 P.2d 783, 166 A.L.R. 1329.

The judgment is reversed and remanded with instructions to make findings and compute damages in accordance with the views herein expressed.

**Larry Dean PEARL and Denise Pearl, both minors, by Frances LaVerne Pearl, their mother and next friend, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 5250.**

United States Court of Appeals Tenth Circuit.

Feb. 8, 1956.

2. In the Commercial Molasses case, the court said: "Since the bailee in general is in a better position than the bailor to know the cause of the loss and to show that it was one not involving the bailee's liability, the law lays on him the duty to come forward with the information available to him. The Northern Belle, 9 Wall. 526, 529, 19 L.Ed. 746; Gulf, C. & S. F. Ry. Co. v. Ellis, 8 Cir., 54 F. 481, 483; Pacific Coast S.S. Co. v. Bancroft-Whitney Co., 9 Cir., 94 F. 180; The Nordhvalen, supra, 6 F.2d [883] at page 886. If the bailee fails it leaves the trier of fact free to draw an inference unfavorable to him upon the bailor's establishing the unexplained failure to deliver the goods safely. Southern Ry.

244

Schwoerke & Schwoerke, Claude E. Love and James E. Grigsby, Oklahoma City, Okl., for appellants.

B. Jenkins Middleton, Atty., Dept. of Justice (Warren E. Burger, Asst. Atty. Gen., Paul W. Cress, U. S. Atty., Oklahoma City, Okl., and Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN, Circuit Judge, and MELLOTT, District Judge.

Co. v. Prescott, supra [240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836]; cf. The America, D.C., 174 F. 724."